FIRST NATIONAL BANK OF BARTLESVILLE v. GEORGE W. BLAKE-MAN.

(Filed September 4, 1907.)

(91 Pac. 868.)

1.    WITNESSES—General Reputation—Evidence of Inadmissable, When.   On the trial of a cause to a jury, where the defendant testifies as a witness in his own behalf, and is not impeached in any manner recognized by the rules of evidence, it is reversible error to permit him to introduce evidence of his general reputation for truth and veracity.

2.    SAME.   The rule is stated in the opinion, as to when a party will be allowed to corroborate his own testimony by evidence of previous good character.

*Error from the District Court of Pawnee County; before Bayard T. Hainer, Trial Judge.*

Reversed and remanded.

*Biddison & Eagleton,* for plaintiff in error.

*Wrightsman & Fulton* and *James B. Diggs,* for defendant in error.

Opinion of the court by

BURFORD, C. J.: The plaintiff in error, the First National Bank of Bartlesville, commenced its action in the probate court of Pawnee county against the defendant in error, George W. Blakeman, to recover judgment upon a promissory note for the sum of $349.30, bearing date Jan. 21, 1902, payable to T. J. Milton or order, and purporting to be signed by Geo. W. Blakeman. The note was endorsed by Milton to the plaintiff in error, and, payment being refused after maturity, the bank sued Blakeman as maker of the note. Blakeman denied under oath the execution of the note. The cause went to the district court on appeal for trial *de novo*. The case was tried to a jury on the sole issue as to the genuineness of the signature of the maker of the note. A number of witnesses testified to the facts relevant to the issue, and the defendant Blakeman testified as a witness in his own behalf, denying unequivocally that he had signed or authorized the signing of the note sued on. No person testified to having seen him sign the note, and the payee, Milton, was not produced as a witness by either party. There was some testimony by experts as to the genuineness of the signature. There was no evidence offered for the purpose of impeaching the testimony of Blakeman, nor was there on cross-examination of Blakeman any attempt made to show that he had made contradictory statements, or that he had committed any criminal or immoral acts. No evidence was offered attacking his general reputation for truth and veracity. During the trial the defense offered several witnesses, and, after qualifying them as character witnesses, they were permitted to testify, over the objection and exception of the plaintiff, that the reputation of Blakeman for truth and veracity was good in the neighborhood in which he lived. The case was submitted to the jury, and verdict returned in favor of the defendant Blakeman. The bank filed a motion for new trial, in which it alleged as error the ruling of the court in admitting the evidence of the general reputation of the defendant. The motion was overruled, and judgment

rendered for the defendant. The bank appeals, and assigns as error the overruling of its motion for new trial.

But one question is presented or argued by counsel for plaintiff in error. The sole question for our determination is: Was it reversible error for the court to permit the defendant, whose character had not been attacked, to introduce evidence of his general reputation for truth and veracity? The plaintiff in error insists upon the extreme rule that it is never permissible to offer evidence of general reputation unless the general character for truth and veracity is attacked by the adverse party, while the defendant in error insists upon the other extreme, that anything which tends to discredit the testimony of a witness is an impeachment of the witness, and entitles him to offer testimony in support of his general reputation for truthfulness. Both parties are sustained by respectable authority, but we think neither of them suggests the safe rule. The question as to when and under what conditions a witness may be corroborated by evidence of general good character is one that has been as much discussed by text writers and jurists, and upon which there is as irreconcilable confusion, as many others found in the books in this country of many jurisdictions. This court has never been called upon to adopt a rule on the subject, and we feel it our duty to explore the field fully and select the path which seems to lead to the most logical and beneficial results. It is useless to attempt to reconcile the many judicial decisions upon the main subject and its related branches; nor would it be profitable to make a critical review of them. There are a few general principles which pervade all the adjudicated cases, and these have been carefully stated and learnedly considered by the eminent text writers on evidence, and we may safely base our conclusions upon a consideration of their labors. One of our earliest American writers upon the law of evidence, and one whom every lawyer and jurist of to-day venerates, Prof. Greenleaf, in vol. 3, sec. 469, (15th ed.) of his work, says:

"Where evidence of contradictory statements by a witness, or

of other particular facts, as for example, that he has been committed to the house of correction, is afforded by way of impeaching his veracity, his general character for truth being thus in some sort put in issue, it has been deemed reasonable to admit general evidence that he is a man of strict integrity and scrupulous regard for truth. But evidence that he has on other occasions made statements similar to what he has testified in the cause is not admissible unless where a design to misrepresent is charged upon the witness in consequence of his relating to the party or to the cause, in which case it seems it may be proper to show that he made a similar statement before the relation existed. So, if the character of a deceased attesting witness to a deed or will is impeached on the ground of fraud, evidence of his general good character is admissible. But mere contradiction among witnesses examined in court supplies no ground for admitting general evidence as to character."

We find the subject thus discussed in Underhill on Evidence, sec. 352: "The direct impeachment of a witness by any of the means which have been above explained creates an issue respecting his general character for truthfulness. Evidence to support this and to show that he is a person in whose testimony the jury may have confidence is, therefore, relevant. But evidence of reputation is not relevant merely because there is a contradiction between adverse witnesses, or because the credibility of a witness is shaken on cross-examination, though its admission in such cases may not be reversible error. A distinction has sometimes been made by which it has been held that general evidence of the character of the witness for truthfulness is not relevant if he was impeached merely by showing that he had made contradictory statements. This distinction is repudiated by a majority of the decisions which support the proposition that general evidence of the character of the witness as a truthful person is always admissible whenever any attempt, though it may have been unsuccessful, has been made to impeach it, as for example, where another witness is asked what is his charatcer for truth and replies it is good."

In Jones on Evidence, vol. 3, sec. 870, the author, in discussing this question, says: "While it is clear that a direct attack upon the reputation of a witness admits evidence to sustain his credibility, the question whether such evidence is rendered admissible by collateral attack is involved in more difficulty. It has sometimes been held that, if it appears from the cross-examination of a witness that he has been guilty of immoral conduct or charged with a criminal offense, he may be sustained by evidence of good character for truth. So it was held that, when a witness was assailed by evidence that he had been suborned and paid for his testimony, his good character for veracity might be shown. So the same class of testimony has been received in an action on an insurance policy where the defendant had sought to prove that the plaintiff had burned his building and made false proofs of loss, and in an action for forgery where the defendant sought to prove that a witness for the state had himself committed the forgery, proof of the good character of such witness was allowed. As we have seen, although it is held in some of the cases that answers on cross-examinations which tend to disparage the character of the witness are sufficient to render admissible sustaining evidence of his good character, and although there is considerable authority in the decisions to support this view, the practice would undoubtedly lead to great confusion and the multiplicity of collateral issues unless carefully guarded by the discretion of the trial judge. It is well settled that, when either by cross-examination or other evidence that the witness has been convicted of a crime, his good reputation for truth since such conviction may be shown. And such testimony is not received where it appears that the witness was acquitted or merely charged with crime without a conviction. So where a witness admitted on cross-examination that he had been drunk on various occasions it was held that this did not render testimony admissible as to his general good character for veracity."

And in section 871 the same author says:

"It has sometimes been held that, where proof has been offered of the inconsistent or contradictory statements of a witness, his credit may be sustained by proof of his good reputation for truth and veracity; that since the object of the attack is to impeach the witness, the mode of such attack is immaterial, and the same reason exists for sustaining the witness as where witnesses are called to testify to his bad reputation. But it is the better view, and one sustained by the weight of authority, that in such cases the witness cannot be fortified by evidence of good character. Although the contradiction in his statements may tend to show that he ought not to be believed in the particular case, this does not necessarily touch his general good character for truth or integrity, since the inconsistency may be the result of mistakes or forgetfulness. On the same principle, and perhaps for stronger reasons, it is no ground for the introduction of evidence to sustain the character of a witness that other witnesses have contradicted him by testifying to a different state of facts, and this remains true although the contradiction is of such a character as to incidentally impute immorality or crime."

That learned and scholarly jurist, Mr. Justice Elliott, upon the subject under consideration, in his work on evidence, vol. 2, sec. 995, says: "When the reputation of a witness for truth has been impeached, the party calling a witness has a right to call other witnesses to prove that his reputation is good. Good character, it has been held, may be shown where the witness has been impeached by proof of conviction of crime. But this principle is not always applied, at least where there is no real attack by way of impeachment. If the witness has been impeached by proof that he made contradictory and inconsistent statements out of court, some of the cases allow his good character to be shown in corroboration, while others refuse to admit such testimony. However, to render testimony of good character competent and admissible in support of the witness, an attack must necessarily have been made on his character." And in section 971, he proceeds to show how a witness may be impeached, by showing either by cross-examination or by opposition witnesses bias, malice, prejudice, interest or corruption; by showing inconsistent and contradictory

statements of the witness; by showing general bad character or reputation for truth and veracity.

In Bradner on Evidence, sec. 16, it is said: "Testimony to support the character of a witness cannot be given in evidence unless the credibility of the witness is impeached."

Prof. Wigmore, in his critical and extensive contribution to the literature of the law, has gone over this subject more analytically and completely than any other text writer, and in section 1104 of Wigmore on Evidence, he gives us the following: "Good character for veracity is as relevant to indicate the probability of truth-telling as bad character for veracity is to indicate the probability of the contrary. But there is no reason why time should be spent in proving that which may be assumed to exist. Every witness may be assumed to be of normal character for veracity, just as he is assumed to be of normal sanity. Good character, therefore, in his support is excluded until his character is brought in question and it becomes worth while to deny that his character is bad. The question thus always arises, under the general rule, when is the witness's character brought into question by the opponent so as to open the way to evidence of good character in denial? This must depend on the nature of the opponent's impeaching evidence. It may be a direct assault on the witness's character, in which case no doubt exists. But it may be evidence of a doubtful or ambiguous import, for example, of bias, of a prior self-contradiction, of an error of fact, and so on through the whole series of kinds of discrediting evidence. It is obvious that the theory of each of these kinds of evidence must be considered before it can be said whether it affects the witness's character."

From these several statements of the law we think it a fair and reasonable deduction that when a witness has testified, and the opposite party has either upon cross-examination of such witness or by the introduction of independent testimony impeached such witness in any one of several particulars, it is competent to corroborate him by evidence of his general reputation for truth and

veracity. But it is not every act of the adverse party which would have the effect to discredit the witness or his testimony that entitles him to such corroboration. The weight of modern authority seems to classify the cases in which evidence of general reputation in support of a witness is admissible practically as follows: First, where there has been a direct attack upon the character of the witness by offering evidence tending to show that his general reputation for truth and veracity is bad. This rule is universal and unquestioned. Second, where the witness has been impeached by evidence of particular acts of criminal or moral misconduct, either on cross-examination or by record of conviction. While this rule is not universally adopted by the American courts, it is supported by the following cases: *Lewis v. State,* 35 Ala. 386; *People v. Ah Fat,* 48 Cal. 61; *People v. Amanacus,* 50 Cal. 233; *State v. Fruge,* 44 La. Ann. 165; *Vernon v. Tucker,* 30 Md. 456. *Russell v. Coffin,* 8 Pick. (Mass.) 143; *Gertz v. Fitchburg R. Co.,* 137 Mass. 77; *People v. Rector,* 19 Wend. (N. Y.) 569; *Carter v. People,* 2 Hill. (N. Y.) 317; *People v. Gay,* 7 N. Y. 378; *Stacy v. Graham,* 14 N. Y. 492; *Webb v. State,* 29 Ohio St. 358; *Wick v. Baldwin,* 51 Ohio St. 51; *Warfield v. Ry. Co.,* 104 Tenn. 74; *Smith v. Tate* (Tex.) 50 S. W. 363; *Lutterell v. State* (Tex.) 51 S. W. 930; *Paine v. Tilden,* 20 Vt. 554; *George v. Pilcher,* 28 Gratt. (Va.) 299; *Reynolds v. R. R. Co.* 92 Va. 400; *Clark v. State* (Ga.) 43 S. E. 853; *Clark v. Bond,* 29 Ind. 555; *Warfield v. L. & N. Ry.* (Tenn.) 55 S. W. 304. Third, impeachment by evidence of corruption on the part of the witness in connection with the case in which he appears. Fourth, impeachment by evidence of contradictory or inconsistent statements admitted on cross-examination or shown by the testimony of other witnesses. Upon this last rule the authorities are in irreconcilable conflict, and are about equally divided, but the better reason seems to favor the right to corroborate the witness, whose evidence is in this manner discredited, by allowing proof of his general reputation for truth and veracity. *Hodge v. Gooden,* 13 Ala. 718; *Holly v. State,* 105 Ala. 100; *Mercer v.*

*State,* 40 Fla. 216; *McEwen v. Springfield,* 64 Ga. 159; *Clark v. State,* 117 Ga. 254; *Paxton v. Dye,* 26 Ind. 394; *Clem v. State,* 31 Ind. 418; *Board v. O'Conner,* 137 Ind. 622; *State v. Boyd,* 38 La. Ann. 374; *Davis v. State,* 38 Md. 15; *People v. Rector,* 19 Wend. (N. Y.) 583; *Isler v. Demy,* 71 N. C. 14; *Burrell v. State,* 18 Tex. 713; *Street v. Sherman,* 21 Vt. 23; *Stevenson v. Gunning,* 74 Vt. 601; *State v. Stoley,* 45 W. Va. 198.

There are other particular cases in which, in the exercise of a wise discretion, the trial court may properly allow evidence of general reputation of a witness in support of such witness, but there must be some special or particular element introduced into the case by the adverse party by which such witness is impeached or discredited. But the foregoing rules embrace the general classes of cases in which such practice is allowable. In the examination of the case under consideration, we find nothing in the evidence, nor in the cross-examination of the defendant, which brings the case within any of the adjudicated cases. The question as to whether he signed the note sued on was the vital and controlling question. He testified that he did not sign the note, that he did not see the payee on the day the note purported to have been executed, and offered other corroborating evidence to support his position. The bank offered some expert evidence upon the question of the identity of the signature, and attempted to prove that the defendant had made certain admissions from which it might be inferred that he had signed the note. There was nothing involving moral turpitude of the defendant in the transaction; if a crime had been committed, it was by the person who forged the note. It is not sufficient to entitle one to corroborate his evidence by general character that the facts to which he testifies are contradicted or disproved by other witnesses. The testimony introduced by the defendant that his general reputation for truth and veracity was good was liable to have great weight with the jury and to have influenced their cerdict. It was reversible error to admit such evidence under the circumstances presented by the evidence in the case.

The judgment of the district court of Pawnee county is reversed, at the costs of the defendant in error, and the cause remanded, with directions to grant a new trial

Hainer, J., who presided in the court below, not sitting; Irwin, J., absent; all the other Justices concurring.