## COLBY v. DANIELS.

No. 16346. Opinion Filed June 21, 1927.

(Syllabus.)

1. **Appeal and Error—Waiver of Error—Lack of Argument and Authorities—Instructions.**

Under Rule 26 of this court, assignments of error predicated upon the giving or refusal of instructions to the jury will be

deemed to have been abandoned, when the brief contains neither argument nor authority in support thereof.

**2. Appeal and Error—Waiver of Error—Lack of Argument and Authorities.**

Where no argument is presented or authority cited in support of assignments of error, the assignments of error will be held to be waived.

**3. Contracts—Voidability for Fraud—Ratification.**

Contracts induced by fraud are not void, but voidable. The defrauded party may elect, with knowledge of the facts concerning the fraud, to treat the contract as valid, and if he does so, he cannot thereafter change his position and insist that it is invalid.

**4. Damages—Breach of Contract—Exemplary Damages not Recoverable.**

Where it is apparent from the verdict of the jury that it did not find fraud within the issues submitted by the instructions of the court, the award of exemplary damages was not supported by the evidence.

**5. Same.**

In an action for the breach of an obligation arising from a contract, exemplary or punitive damages are not recoverable.

**6. Appeal and Error—Trial — Order of Proof—Discretion of Court.**

The question of the mere order in which proof is introduced at a trial rests very much within the sound discretion of the trial court; and unless it clearly appears that this discretion has been abused to the injury of complaining party, a reversal will not be ordered on this ground.

(Commissioners' Opinion, Division No. 1.)

Error from District Court, McClain County; W. L. Eagleton, Judge.

Action by B. F. Daniels against L. O. Colby. Verdict and judgment for plaintiff of $572.60, compensatory damages, and $500 exemplary damages. Defendant appeals. Judgment affirmed upon filing remittitur of $500; otherwise, reversed and remanded.

Blanton, Osborn & Curtis, for plaintiff in error.

Glasco & Glasco, for defendant in error.

MONK, C. The plaintiff in error was defendant, and the defendant in error was plaintiff, in the court below. In this opinion the parties will be referred to as in the trial court.

B. F. Daniels, as plaintiff, instituted this action in the court below against the defendant, L. O. Colby, by filing the following petition:

"Comes now the plaintiff, B. F. Daniels, and represents and shows to the court that both he and the defendant, L. O. Colby, are residents of McClain county, Okla.; that for cause of action against defendant, plaintiff alleges and states:

"That Dr. J. H. Colby is the husband of L. O. Colby, and her duly authorized agent, and is authorized as such agent of the defendant, L. O. Colby, to enter into lease contracts and other contracts affecting her property, and to transact all kinds of business in general for her.

"That on the 19th day of December, 1922, the plaintiff entered into a certain lease contract with the defendant whereby the defendant rented to plaintiff for the year 1923 the following described lands situated in McClain county, Okla., to wit: The E.½ of the S. E. ¼ of the N. E. ¼ of section 8, twp. 7 N., range 3 west.

"That a true copy of said contract is hereto attached, marked Exhibit 'A,' and made a part of this petition; that said contract provides that the plaintiff should pay to the defendant one-third of all broom corn raised upon said lands during the year of 1923; that defendant by and through her duly authorized agent, J. H. Colby, induced the plaintiff to enter into said contract and agree to pay to the defendant as rent one-third of the broom corn raised on said premises during the year 1923 by false and fraudulent representations; that the plaintiff at the time he entered into said contract had had no experience in growing broom corn and had no knowledge whatsoever as to what was the customary rent paid by the tenant who grew broom corn to the landlord; that the defendant and her agent, J. H. Colby, well knew what was customary rent on broom corn and well knew that it was customary for the tenant to pay to the landlord one-fourth where the landlord furnished the broom corn shed and slats and one-fifth where the broom corn shed and slats were furnished by the tenant, but notwithstanding this the defendant's agent, J. H. Colby, fraudulently and falsely represented to this plaintiff that it was customary for the tenant who grew broom corn in this country to pay one-third of the broom corn, the tenant to furnish the shed and slats for curing the same; that the plaintiff repeatedly told the said J. H. Colby before entering into said contract that he would pay the customary rent but did not want to pay any more, and believing the false and fraudulent representations so made by the said J. H. Colby as the agent of the defendant, the plaintiff entered into said contract and agreed to pay one-third of the broom corn raised during the year of 1923: that had it not been for the said false and fraudulent statements so made by the said J. H. Colby as defendant's agent the plaintiff would not have entered into said contract.

"That plaintiff planted part of said land in broom corn during the year 1923, and harvested the same and furnished his own shed and broom corn slats for the curing of said broom corn; that he harvested 8,940 lbs. of broom corn; that he had not learned what the customary rent on broom corn was until he had harvested said broom corn; that before he had completed the harvesting of said broom corn the said J. H. Colby as agent of the defendant frequently approached this plaintiff and wanted to buy said broom corn, and each time appeared very eager to close a deal with the plaintiff for the purchase of the same; that the plaintiff finally agreed to sell said broom corn to the defendant for the sum of $180 per ton; that at the time the deal was made, it was agreed that said price should be paid in cash upon the delivery of said broom corn at Purcell; that the said J. H. Colby, as agent of the defendant, insisted that the plaintiff deliver said broom corn immediately, and induced the plaintiff to haul said broom corn to Purcell and load it into the freight cars after he had weighed the same; that after the plaintiff had delivered said broom corn and the same had been shipped, out of the city of Purcell, the plaintiff immediately went to the said J. H. Colby as defendant's agent and demanded the payment of the balance of the purchase price of said broom corn; that the defendant and her said agent, J. H. Colby, failed and refused to pay the balance of the purchase price of said broom corn, and falsely and fraudulently stated to the plaintiff that the agreement was that plaintiff was only to receive the sum of $180 for all of said broom corn, instead of $180 per ton, as was actually agreed upon; that the sum of $180 was less than the cost of harvesting said broom corn and no such contract was ever made by the plaintiff or considered; that the defendant falsely and fraudulently entered into said contract promising to pay the plaintiff the sum of $180 per ton for his broom corn, and at the time said contract was entered into the defendant had a fixed intention of not performing said contract, but at that time fully intended to swindle this plaintiff out of his entire broom corn crop for the sum of $180, and said false and fraudulent promise was made by the defendant and her said agent, J. H. Colby, in order to obtain possession of the said broom corn and to defraud the plaintiff; that the defendant was entitled to only one-fifth of said broom corn as rent, which would be 1,788 lbs.; that 7,152 lbs. of said broom corn was the part actually belonging to this plaintiff, that the reasonable market value of plaintiff's part of said broom corn would be the sum of $683 68; that plaintiff is therefore entitled to recover from the defendant the sum of $683.68, actual damages, with interest thereon at the rate of six per cent. per annum from September 17, 1923.

"That the defendant has been guilty of fraud, malice and oppression in the transaction described in this petition, and plaintiff therefore is entitled to recover from the defendant the sum of $1,000 exemplary or punitive damages on account of the wrongful, fraudulent, oppressive, and malicious acts against this plaintiff on the part of the defendant and her said agent, J. H. Colby.

"Wherefore, plaintiff prays judgment against the defendant for the sum of $683.68 actual damages, with interest thereon at the rate of six per cent. per annum from the 17th day of September, 1923, and the further sum of $1,000 exemplary or punitive damages, and all costs herein."

Thereafter, the defendant answered admitting the execution of the lease contract, the harvesting of the crop thereon, and the purchase of plaintiff's interest therein, denying all other allegations of the petition, and alleging defendant's agreement to pay, and payment of, $180 in consideration for said crop, and alleging that plaintiff, pursuant to said agreement, delivered said crop to defendant.

On October 16 1924, under the above pleadings, the cause was tried to a jury. The defendant requested eight instructions, which were refused by the court. The plaintiff requested no instructions. The court gave a general charge on the issues and 13 numbered instructions.

Instruction No. 6 defines the issues to the jury, and is as follows:

"You are therefore instructed that there are two matters for you to consider, and the burden of proof is upon the plaintiff as to both of those matters: First, as to whether or not the lease contract was entered into because of fraudulent misrepresentations of the agent of defendant; and, second, whether or not the sale of the broom corn by plaintiff to defendant was for $180 per ton, or for $180 for the entire interests of plaintiff in said corn."

Under the instructions, the question of fraud in the oral contract for the sale of the crop was not submitted to the jury, and the only value per ton of the crop submitted by the instructions was $180.

Instruction No. 5 was the court's charge to the jury with reference to the oral contract for the sale of the crop and it is as follows:

"You are further instructed that there is evidence of a verbal contract of sale of the broom corn raised upon these premises in 1923 between the plaintiff and the defendant. The plaintiff insists that the purchase price of said broom corn was $180 per ton; the

defendant alleges that he purchased the entire interests of the plaintiff in said broom corn for $180.

"You are instructed that inadequacy of price alone is not proof that the contract was not entered into, but any inadequacy in price which you may believe from a preponderance of the evidence was shown, may be considered with all of the other facts and circumstances in determining as to which of the parties remembers the contract best, the plaintiff or the defendant."

On cross-examination the plaintiff testified that before planting his crop he learned that the customary rental, under the conditions of his contract, was one-fourth instead of one-third, as provided in his contract. Later, the plaintiff was recalled, and on direct examination testified that sometime after the planting of his crop he learned the customary rental was one-fourth.

The jury was instructed with reference to this question in the court's instruction No. 3, as follows:

"If you find that there was a representation by J. H. Colby as to the customary rental on broom corn, but that the plaintiff learned the facts about the custom in that respect before he began the performance of his contract, then the plaintiff could not rely on such representation and avoid the payment of one-third of the broom corn as rents."

As a part of plaintiff's case in chief he was permitted over the objection of the defendant to introduce testimony as to the general reputation of the plaintiff in the community for truth and veracity.

The jury, by its verdict returned on the same day, did "fix the amount of plaintiff's recovery in the sum of $572.60 and exemplary damages in the sum of $500." Upon this verdict judgment was rendered. Thereafter, a motion for a new trial was filed, overruled, and appeal perfected. The petition in error presents 23 assignments.

Assignments 8 to 21, inclusive, relate to alleged error of the court in the giving and refusal of instructions. Neither argument nor citation of authority in support of these assignments of error appears in the brief, and under Rule 26 of the Supreme Court, assignments of error, predicated upon the giving or the refusal of instructions to the jury, will be deemed to have been abandoned when the brief contains neither argument nor authority in support thereof. Talla v. Anderson. 53 Okla. 418, 156 Pac. 670.

The second assignment of error relates to the court's action in denying defendant's mo-

tion to strike that portion of plaintiff's petition which relates to exemplary damages. The brief contains neither argument nor citation of authority on this assignment, and it will be deemed abandoned.

"Where no argument is presented or authorities cited in support of assignments of error, the assignments of error will be held to be waived." Florence v. Russell, 105 Okla. 20, 231 Pac. 301.

Assignments 4, 5, 6, and 7 complain of the court's action in the admission, rejection, and refusal to strike testimony. The brief does not contain argument nor citation of authority upon these assignments (nor does it contain, as required by Rule 26, the substance of the testimony referred to in the assignments), and these assignments will be deemed waived. Florence v. Russell, supra.

The remaining assignments of error, and those which will be considered in connection with plaintiff's argument, are as follows:

"First: Because the court erred in overruling and denying the motion for new trial filed by plaintiff in error."

"Third: Because the court erred in admitting the testimony of C. M. Holliday over the objections and exceptions of the plaintiff in error then and there made, to the effect that the general reputation of B. F. Daniels in the community in which he lived was good."

"Twenty-second: Because the court erred in not setting aside the verdict and granting the plaintiff in error a new trial because the item of exemplary damages is not supported by sufficient evidence, and because the item $572.60 for actual damages is excessive and is not supported by sufficient evidence.

"Twenty-third: Because the judgment and verdict of the jury is contrary to the law."

Plaintiff in his brief submits three propositions:

"First: No punitive damages were recoverable in this action.

"Second: The plaintiff was not entitled to recover for the alleged fraud entering into the terms of the rental contract.

"Third: The court erred in the admission of certain testimony."

The defendant insists that this action is founded solely upon breach of contract and argues that exemplary damages are not recoverable under section 5975, C. O. S. 1921, which is as follows:

"In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud,

or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

We believe defendant is correct in the position that in an action for the breach of an obligation arising from contract, exemplary or punitive damages are not recoverable.

However, that portion of plaintiff's petition which alleges fraudulent representations of defendant, inducing plaintiff to enter into the rental contract, sounded in tort. Proof was offered in support of these allegations, and the jury was instructed on this issue as follows:

"In this case you are instructed that a contract in writing merges everything that occurred between the parties with reference to said contract up to the date of the signing of the written instrument, and that same must be enforced according to the usual and ordinary language used in said contract unless it is alleged that there was a mutual mistake in the terms of said contract, which was not alleged in this case, or that by fraud and duress one of the parties was induced to sign said contract, in either of which events the said contract may be annulled. (Excepted to by defendant and exception allowed.)

"You are instructed in this connection that the burden of proof is on the plaintiff in this case to show that the written contract was induced through fraudulent misstatements of defendant, or her agent, and unless you are satisfied by a preponderance of the evidence that said contract was entered into by and between the parties through the fraud, misstatements and misrepresentations of the agent of defendant upon the material facts, then and in that event you are instructed that the contract is binding as written and should be considered by you as a binding contract.

"But, on the other hand, if you are satisfied by a preponderance of the evidence that said contract was entered into because the plaintiff was misled because of fraudulent misstatements or misrepresentations of the agent of the defendant, then you can consider said contract as of no binding force and the case should be determined upon the evidence and the further instructions of the court. (Excepted to by defendant, L. O. Colby, and exception allowed.)"

The question as to whether that portion of plaintiff's petition which relates to the sale of the corn crop was based upon contract or tort is not before us, since the court by its instructions Nos. 5 and 6:

"You are further instructed that there is evidence of a verbal contract of sale of the broom corn raised upon these premises in 1923 between the plaintiff and the defendant.

The plaintiff insists that the purchase price of said broom corn was $180 per ton; the defendant alleges that he purchased the entire interests of the plaintiff in said broom corn for $180.

"You are instructed that inadequacy of price alone is not proof that the contract was entered into, but any inadequacy in price which you may believe from a preponderance of the evidence was shown, may be considered with all of the other facts and circumstances in determining as to which of the parties remembers the contract best, the plaintiffs or the defendant. (Excepted to by defendant and exception allowed.)

"You are therefore instructed that there are two matters for you to consider, and the burden of proof is upon the plaintiff as to both those matters. First, as to whether or not the lease contract was entered into because of fraudulent misrepresentations of the agent of defendant, and second, whether or not the sale of the broom corn by plaintiff to defendant was for $180 per ton, or for $180 for the entire interests of plaintiff in said corn. (Excepted to by defendant and exception allowed.)"

—submitted the issue as one of contract, and took from the jury the question of fraud in the making of the verbal contract for the sale of the crop, and by instructions Nos. 5 and 6, supra, left the jury to determine which of the parties remembered the contract best, that is, whether the purchase price of the crop was $180 per ton, as contended by plaintiff, or $180 for the entire interest of plaintiff, as contended by defendant.

The jury, therefore, had before it the question of fraud only in connection with the making of the rental contract; and not in connection with the making of the verbal contract for the sale of the crop.

Under the instructions of the court, the jury could have found that the defendant practiced fraud upon the plaintiff in representing the customary rental, or under instruction No. 3:

"If you find that there was a representation by J. H. Colby as to the customary rental on broom corn, but that the plaintiff learned the facts about the custom in that respect before he began the performance of his contract, then the plaintiff could not rely on such representation and avoid the payment of one-third of the broom corn as rents"

—finding that fraud had been practiced, they could have further found that plaintiff had waived his right to stand upon fraud, or rather had ratified the contract with knowledge of the fraud.

This he might do:

"After the defrauded party with knowledge of the facts has elected to treat the contract as valid, he cannot change his position and assert that it is invalid." 13 C. J. 395.

"Contracts induced by fraud are not void, but voidable. The defrauded party may elect, with knowledge of the facts concerning the fraud, to treat the contract as valid, and if he does so, he cannot thereafter change his position and insist that it is invalid." Wingate v. Render, 58 Okla. 656, 160 Pac. 614.

Or the jury could have found that no fraud was practiced in the insertion of the rental clause in the lease contract.

The jury under the court's instructions, and particularly under instruction No. 6, were precluded from the question of fraud in the verbal contract for the sale of the crop. Therefore, the question of exemp'ary damages depends upon the jury's finding with reference to fraud in connection with the rental provision in the lease contract.

We are impressed by the reasoning of defendant with reference to the amount of compensatory damages. The jury returned a compensatory verdict of $572.60. It is not disputed that 8,940 pounds of broom corn was the crop yield upon the leased premises. Under the written contract plaintiff's share of this crop was two-thirds, or 5,960 pounds. As suggested, supra, under the court's instructions the jury had before them only one figure as the value per ton of the crop, to wit, $180; 5,960 pounds would be 2.98 tons, which, at $180 per ton, would amount to $536.40. Plaintiff's petition asks for interest at six per cent. from September 17, 1923. The date of trial was October 16, 1924, the interest period being one year and 29 days. Six per cent. on $536.40 for this period would be $34.86, making a total of $571.26.

The compensatory award of the jury was $572.26.

The jury could not have made their compensatory award on the basis of plaintiff's contention that the rental was one-fourth, for his portion of the 8,940-pound crop wou'd be three-fourths or 6,670 pounds, or 3.335 tons, which at $180 per ton—this being the only value per ton submitted to the jury—would amount to $600 and interest thereon at the above rate, and for the above term would be $39.01, making a total of $639.01, which would be the amount properly allowed as compensatory damages if the jury were taking the rental basis of one-fourth.

The discrepancy of $1.32 between the amount actually allowed and the amount allowable under the contract on a one-third rental basis, could easily have occurred through the method employed by the jury in computing the interest. The proximity of these figures leads us to the conclusion that the jury employed the basis of one-third rental in arriving at compensatory damages; that accordingly they either found from the evidence that no fraud was practiced by the defendant in securing the insertion of the rental clause in the lease, or having found initial fraud in this respect, the jury further found under the court's instruction No. 3 that the plaintiff, with knowledge of the misrepresentation, had ratified the written contract of lease and thereby waived his right to claim damages for the misrepresentation.

As we have pointed out heretofore, the issue of fraud in the making of the verbal contract of sale was withheld from the jury under the court's instructions.

We therefore conclude that the jury either did not find fraud with reference to the execution of the rental contract, or, finding fraud, further found it had been waived by plaintiff, and that if the jury found any fraud upon which to base their verdict of $500 exemplary damages, it must have been with respect to the verbal contract of sale, and was therefore beyond the issues submitted to them under the court's instructions.

The jury evidently found under the court's instructions 4, 5, and 6 that the plaintiff remembered the "contract best," and that the purchase price of the corn under their verbal agreement was $180 per ton. Therefore, the jury's compensatory award of $572.60 was correct.

Having reached this conclusion, we do not deem it necessary to consider the second proposition presented in defendant's brief.

Defendant's third proposition complains of error in the admission in plaintiff's case in chief of evidence of the general reputation of plaintiff for truth and veracity.

Defendant cites in support of this proposition: Wyrick v. Campbell, 67 Okla. 240, 170 Pac. 267; Great Western Life Ins. Co. v. Sparks, 38 Okla. 395, 132 Pac. 1092; Hammett v. State, 42 Okla. 384, 141 Pac. 419.

We do not believe these cases sustain defendant's point. In the Great Western Case plaintiff sued upon an insurance policy. The defense was a false representation in the application. The proof of fraud was direct and not circumstantial. The court held evi-

dence of the general reputation of defendant for truth and honesty inadmissible in such cases. Hammett v. State was an action to recover a penalty, and the court excluded evidence of defendant's general reputation as a truthful, honest, and law-abiding citizen, as being inadmissible in such cases. The two cases just referred to were not impeachment cases; but general reputation evidence was there offered by way of defense.

Wyrick v. Campbell was an action upon a false representation of defendant as to values. It does not appear at what stage of the cause evidence of general reputation of plaintiff as a truthful and honest man was offered, but the court says:

"The court below permitted evidence, over the objection of the defendant, to the effect that the general reputation of the plaintiff for being a truthful and honest man was good. The reputation of the plaintiff had not been put in issue. The law presumed his good reputation, and in the trial of a civil case the party may not offer evidence to prove his good reputation until it is put in issue by the other party. This was held to be reversible error in the case of Great Western Life Ins. Co. v. Sparks, 38 Okla. 395, 132 Pac. 1092."

The court, however, in the next preceding paragraph of its opinion held:

"The allegations in the petition amounting to no more than a declaration of value, without any representation as to the elements of value, do not state a cause of action, and the testimony offered, being to the same effect, does not prove a cause of action. The court erred in overruling the demurrer."

In view of its holdings, the court's later expression upon evidence of general reputation was obiter, and not sustained by the cases cited.

In the case at bar, on cross-examination of plaintiff, a foundation had been laid for impeachment. This was followed in defendant's case by impeaching testimony. Evidence of general reputation of plaintiff for truth and veracity was certainly admissible in rebuttal. First National Bank of Bartlesville v. Blakeman, 19 Okla. 106, 91 Pac. 868.

We are therefore of the opinion that the admission of the testimony complained of during plaintiff's case in chief, since it would have been admissible in rebuttal, was a mere irregularity not prejudicial to, or affecting, the substantial rights of the defendant.

In Wilson v. Moran, 82 Okla. 34, 196 Pac. 1051, this court said:

"The question of the mere order in which proof is introduced at a trial rests very much within the sound discretion of the trial court, and unless it clearly appears that this discretion has been abused to the injury of the complaining party, a reversal will not be ordered on this ground."

We conclude that the verdict and judgment for $500 exemplary damages was unauthorized under the issues submitted to the jury, and is contrary to law.

If the plaintiff will file in this court within ten days from the rendition of this opinion a remittitur in the sum of $500, the case will be affirmed; otherwise, it will be reversed and remanded with directions for a new trial.

BENNETT, TEEHEE, LEACH, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 3 C. J. p. 1429, §1592; p. 1431, §1593. (2) 3 C. J p. 1428, §1591; p. 1431, §1593. (3) 13 C. J. pp. 394, 395. §303. (4) 17 C J. p. 1042, §341. (5) 17 C. J. p. 977, §272. (6) 4 C. J. pp. 815, 816, §2786; 38 Cyc. pp. 1353, 1354. See under (3) 6 R. C. L. p. 636; 2 R. C. L. Supp. p. 170; 4 R. C. L. Supp. p 430; 6 R. C. L. Supp. p. 401. (4,5) 8 R. C. L. p. 605 et seq.; 2 R. C. L. Supp. p. 633.