## CHARLEY v. BRITTON-JOHNSON OIL CO.

No. 15832.   Opinion Filed Nov. 29, 1927.

Rehearing Denied Feb. 14, 1928.

(Syllabus.)

Courts—Guardian and Ward—Rules of Supreme Court Governing Probate Procedure—Substantial Compliance.

The rule of this court promulgated June 11, 1914, relating to procedure of county courts in probate matters, has the force and effect of law, and is binding upon the court as well as upon the parties to the action and cannot be dispensed with to suit the circumstances in any particular case, and when a substantial compliance with the provisions thereof has been shown and the rights of the minor or incompetent, which it was designed to protect, are shown to have been thoroughly safeguarded, proceedings thereunder will be upheld.

Error from District Court, Tulsa County; Albert C. Hunt, Judge.

Action by Lemuel Charley, an incompetent, by Vernon F. Seaman, guardian, against Britton-Johnson Oil Company, a corporation. Judgment for defendant, and plaintiff appeals. Affirmed.

Ellis A. Robinson, Victor C. Mieher, Quincy J. Jones, Thomas D. Lyons, and Rittenhouse & Rittenhouse, for plaintiff in error.

W. D. Abbott, N. E. McNeill, and M. C. Rodolf, for defendant in error.

PHELPS, J. The parties will be herein referred to as they appeared in the trial court.

Lemuel Charley was a full-blood Cherokee Indian minor, and was the owner of the 160 acres of land covered by the leases out of which this lawsuit grew, 80 acres of which land was his allotment and the remaining 80 acres he inherited from his deceased father. On February 12, 1906, the land in question was, through the guardian of Lemuel Charley, leased for oil and gas purposes. It was developed by defendant and became a profitable producer of oil and gas. The leases covering this land expired by their terms on March 31, 1919.

It appears that after the original leases were entered into, the Department of the Interior changed its policy of leasing Indian lands, and instead of requiring payment of one-tenth of the oil as royalty, began to require the payment of one-eighth, and instead of making the leases expire on a certain day, they were made for a specified number of years and as long thereafter as oil or gas was produced from the premises. Desiring to extend its leases beyond March 31, 1919, the date of their expiration, defendant, on September 25, 1916, filed its petition in the county court of Tulsa county, praying for an order authorizing the guardian to extend the term of said leases "as long as oil or gas shall be produced from said land," such extension to be "in manner and form required by the Secretary of the Interior."

The county court set the hearing of this application for September 30, 1916, and required five days' notice thereof to be given by posting in three public places in the county, said notice providing that:

"Said extension of said leases now covering said lands will be sold on the following terms and conditions, to wit: A bonus in cash, payment to be made into the hands of the United States Indian Superintendent upon confirmation of the sale of said leases, said sale to be approved by the Secretary of the Interior."

Upon the hearing pursuant to this notice defendant offered to pay for such extension a cash bonus of $20,000 and one-eighth of the oil, and the county court directed the guardian to execute the extension. When the lease contract was submitted to the Secretary of the Interior, he refused to approve the extension lease covering the allotted 80

acres of land, but approved the extension covering the inherited 80 acres after requiring defendant to pay a cash bonus of $30,000. About a year later, under an identical proceeding, the Secretary of the Interior approved an extension to the allotted 80 acres upon the payment of a bonus of $20,000 by defendant. After plaintiff reached his majority he was declared an incompetent, and through his guardian the instant action was filed in the district court of Tulsa county to cancel these extension leases and for accounting, and from an adverse decision in the district court he prosecutes this appeal.

Counsel for plaintiff present their nine assignments of error under three propositions of law, in the first of which they contend that:

"The sale of leases upon the lands of minors and incompetents is within the exclusive jurisdiction of the probate courts of Oklahoma, and not within the jurisdiction of the Secretary of the Interior"

—while it is contended by defendant that, the minor being a full-blood Cherokee Indian, the Department of Interior had supervision and control over and authority to direct the leasing of his land, and that a compliance with rule 9 of this court is not necessary. In view of the conclusion hereinafter reached, we deem it unnecessary to comment on or dispose of this contention.

It is next contended by counsel for plaintiff that:

"The sale of the extensions of the oil and gas leases were in the case of each lease conducted in violation of rule 9 of the Supreme Court of Oklahoma, and were void for that reason."

And in their third contention they say:

"The county court directed the sale of the extensions or leases to be made to the defendant, which orders were void because the court had no power to make such orders."

Counsel for defendant contend that, even if it may be said that the county court had jurisdiction and control over the minor and his property as though he had been a white person, the record discloses a substantial compliance with rule 9 of this court.

Rule 9, adopted by this court on June 11, 1914, reads as follows:

"No oil and gas or other mineral lease covering lands belonging to minors or incompetents will be approved except after sale in open court to the highest and best responsible bidder. All petitions for the approval of oil and gas leases shall be filed five days before the same are sold as pro-

vided herein; and notice of such sale must be given by posting and by publication where publication is practicable."

The validity and binding force of this rule has on numerous occasions been before this court, and it may now be said that it is well settled that this rule has the same binding force and effect as a statutory enactment. Winona Oil Co. v. Barnes, 83 Okla. 248, 200 Pac. 981. The above cited case, however, is easily distinguishable from the case at bar, for in that case no notice was given and no apparent effort made to comply with rule 9.

A similar situation prevailed in Carlisle v. National Oil & Development Co., 83 Okla. 217, 201 Pac. 377, wherein this court held that:

"A sale of an oil and gas lease upon the lands of a minor through the probate court, which is not in substantial compliance with rule 9 of this court, is void."

The above quotation is, at least by implication, authority for the contention that a substantial compliance with rule 9 is sufficient, and at the conclusion of the trial in the district court in the instant case, that court found generally in favor of the defendant on both questions of law and fact, making a specific finding that in the sale of these extension leases there had been a substantial compliance with rule 9, and, in our judgment, the record justifies this conclusion.

In reply to plaintiff's third contention, defendant contends that the extension or modification agreement was in its force and effect the same as executing a new lease, and was, therefore, valid if executed in substantial compliance with the provisions of rule 9, and, as we view it, this contention is amply supported by the record, it being in legal effect the execution of a new lease. The rule announced in paragraph 6 of the syllabus of Winona Oil Co. v. Barnes, supra, does not apply, for the reason that under the notice given in the instant case there was nothing to prevent anyone who saw fit to do so from bidding.

Fraud in procuring the extension contracts was pleaded, but the trial court specifically found that under the evidence no fraud was shown, and in the appeal that question is not briefed or urged, and will, therefore, be considered by this court as waived. Colby v. Daniel, 125 Okla. 202, 257 Pac. 298.

The object and purpose of rule 9 was to prevent a minor or incompetent person from being imposed upon by designing persons

and prohibit the leasing of nis land without affording him the greatest degree of protection, by giving all parties who desired to do so an opportunity to be heard, and to bid, after due notice. In the instant case the notice was given, and the court found:

"That said Britton-Johnson Oil Company * * * had bid and offered to pay to said guardian * * * for the use and benefit of the estate of said minor the sum of $20,000 in cash, which * * * the court finds from the evidence is reasonable and adequate."

It therefore conclusively appears that the minor had the full and complete protection of both the county court and the Department of the Interior, the two agencies specially charged by law with the duty of protecting the interest of the minor. The $50,000 bonus was paid to the minor through the Department of the Interior, and the royalties have been paid regularly through that channel, and, from the record we see no cause for complaint, and the judgment of the district court is affirmed.

BRANSON, C. J., and HARRISON, LESTER, CLARK, RILEY, and HEFNER, JJ., concur. HUNT, J., Trial Judge, not participating.

Note.—See 15 C. J. p. 901, §276; p. 904, §277; pp. 909, 910, §288; 28 C. J. p. 1192, §335.