**McCULLOUGH TOOL COMPANY,
a corporation, Plaintiff,**

v.

**Serge A. SCHERBATSKOY, an individual,
Defendant.**

**Civ. No. 6417.**

United States District Court
N. D. Oklahoma.

March 22, 1968.

Richard B. McDermott, of Boesche, McDermott & Eskridge, T. Austin Gavin, Tulsa, Okl., R. Welton Whann, Los Angeles, Cal., for plaintiff.

John S. Carlson & Roger R. Scott, Truman B. Rucker, of Rucker & Tabor, Paul H. Johnson, of Head & Johnson, Tulsa, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

The Plaintiff, McCullough Tool Company, a corporation, (McCullough Tool) sues the Defendant, Serge A. Scherbatskoy, an individual, (Scherbatskoy) to rescind a written agreement entered into between them for failure of consideration and for breach of said agreement by Scherbatskoy in his failure to grant certain exclusive licenses on certain patents to the Geophysical Measurements Corporation (GMCO) and for fraudulent inducement by Scherbatskoy to Plaintiff causing Plaintiff to enter into said agreement. The fraudulent inducement is claimed to be the promise to make the above grant of licenses which Scherbatskoy never intended to do. The Plaintiff also seeks return of $20,000.00 advanced by it to GMCO and an injunction against the Defendant preventing him from disposing of any stock in Plaintiff now in his possession. During the trial, the Plaintiff added the further reason for rescission of said agreement that Scherbatskoy was guilty of patent misuse in the manner in which he was to be paid royalties on said patents by GMCO. Also during the trial the Plaintiff advanced the proposition that there was no valid agreement between the Plaintiff and the Defendant since they did not have the required meeting of the minds.

The Defendant by answer denies fraudulent inducement and asserts that the agreement of the parties is valid and is supported by a valid consideration. The Defendant also alleges that the agreement was not breached in any respect by the Defendant but has been fully performed by the Defendant. To the said issues injected into the case by the Plaintiff at the trial the Defendant denies patent misuse and states that if the same exists it affords nothing to the Plaintiff herein, and moreover, the Defendant purged himself of said patent misuse when the issue was raised during the trial by the Plaintiff. The Defendant further asserts that the parties had a full and complete meeting of the minds regarding the agreement which was immediately followed by the actual exchange of the stock between the parties and that the conduct of the parties thereafter clearly indicates a meeting of the minds and also amounts to a ratification if the agreement was lacking in any respect. In the answer the Defendant resists the desired injunction and asks for his attorneys' fees and exemplary damages in the amount of $10,000.00.

By counterclaim the Defendant seeks a declaratory judgment interpreting the provision in the agreement of the parties regarding the option of Plaintiff to purchase the shares of stock in Plaintiff belonging to the Defendant and that the agreement and patent licenses are valid.

The evidence reveals that the parties to this litigation for several years had been discussing or negotiating for a merger into one entity of their respective patents in the field of nuclear radiation measurements, this stemming from certain patent interference litigation about the patents involving them and others. On August 14, 1963, Scherbatskoy for GMCO and I. J. McCullough for McCullough Tool, entered into a Memorandum of Agreement and Intent. This was not a contract but rather an indication of

intent to enter into a full agreement in the future. This Memorandum did indicate an exchange of GMCO stock for McCullough Tool stock, the placing of all nuclear radiation measurements patents in GMCO, the payment of reasonable royalties, a termination of pending interference proceedings and the rental of equipment from GMCO by McCullough Tool.

On December 12, 1963, McCullough Tool, Scherbatskoy, and GMCO entered into a written agreement. It first provided that the parties were released from the above Memorandum of Agreement and Intent of August 14, 1963. Then that Scherbatskoy would grant licenses to GMCO on his patents in the nuclear radiation measurements field, certain royalties would be paid to Scherbatskoy and McCullough Tool was to exchange 36,475 shares of its Class B common stock for all the outstanding shares of stock of GMCO which were to be assigned to McCullough Tool by Scherbatskoy, the owner thereof. The agreement contained other provisions incidental to the above main objectives and then provided that the stock exchange and delivery of the license agreements and all other papers necessary to carry the agreement into effect would take place at Tulsa, Oklahoma, on or before January 31, 1964, the closing date. The contract was signed by McCullough Tool, Scherbatskoy and GMCO. The closing provision of this agreement was not accomplished by the parties. This agreement was rescinded and the parties released from the same on February 15, 1964, as hereinafter shown.

On February 15, 1964, in Las Vegas, Nevada, McCullough Tool extended a written offer to Scherbatskoy as President of GMCO. This offer was that McCullough Tool would exchange 36,475 shares of its Class B common stock for all of the outstanding stock of GMCO. The offer contained other incidental provisions and stated that, "By your acceptance of this offer, we rescind and release each other from any prior offers, proposals or agreements heretofore made, written or oral, regarding the exchange herein contemplated." On the same date Scherbatskoy in writing accepted this offer and agreed to exchange 36,475 shares of McCullough Tool stock for all the outstanding shares of stock (680) of GMCO. McCullough Tool acknowledged receipt of this acceptance on February 15, 1964, by noting such on the acceptance. The offer and acceptance were both silent on the matter of Scherbatskoy granting patent licenses to GMCO and the payment of royalties thereon to Scherbatskoy. However, by two identical letters, one dated February 15, 1964, and the other dated February 20, 1964,[1] Scherbatskoy granted exclusive licenses to GMCO on all his present patents, including foreign rights, in the field of nuclear radiation measurements and GMCO agreed to pay Scherbatskoy certain stipulated royalties thereon. These letters were addressed to GMCO and signed by Scherbatskoy and were, "accepted, approved and agreed to" by GMCO, and "approved" by McCullough Tool of even date with the letters.

The stock was then physically exchanged on February 15, 1964, Scherbatskoy receiving in his name 36,475 shares of Class B common stock in McCullough Tool and McCullough Tool receiving 680 shares of GMCO stock which was all of its outstanding stock. On the next day, February 16, 1964, in Las Vegas, Nevada, a special meeting of the stockholders and a special meeting of the board of directors of GMCO were held. These meetings were held pursuant to appropriate waivers of notice and I. J. McCullough had the voting proxy by McCullough Tool for all the stock in GMCO. At these meetings I. J. McCullough, Serge A. Scherbatskoy and L. A. Havens (Secretary of McCullough Tool) were elected directors and Scherbatskoy was

---

[1]. It appears that these two identical letters under different dates were desired for tax purposes and the duplication of letters was to serve no other purpose. They were both signed on February 15, 1964.

elected president, O. J. McCullough and E. W. Munson, vice presidents, L. A. Havens, secretary and treasurer, and J. S. Carlson, Assistant secretary and treasurer. Salaries were fixed, a new bank account was authorized, check writing procedures were established and Scherbatskoy was relieved as registered agent of GMCO and The Corporation Company was designated in his stead. L. A. Havens signed the minutes as the new secretary of GMCO.

Scherbatskoy's attorney returned to Tulsa, Oklahoma, and on February 17, 1964, Scherbatskoy and I. J. McCullough went to the law offices of McCullough Tool's attorney in Los Angeles, California. There, on that day a draft of an agreement between Scherbatskoy and GMCO was prepared. This draft covered Scherbatskoy granting licenses to GMCO on his nuclear radiation measurements patents, GMCO paying royalties to Scherbatskoy and other related items. Strangely enough, according to the evidence, I. J. McCullough did not tell his attorney that agreements had been signed the day before between the parties on these two points, nor did Scherbatskoy advise the attorney of this fact. No reasonable explanation for this peculiar behavior on the part of McCullough and Scherbatskoy was given by either I. J. McCullough or Scherbatskoy. The attorney testified that he was amazed later on when he learned that the parties had previously signed agreements regarding the assignment of patent licenses by Scherbatskoy to GMCO and providing for the payment of royalties to Scherbatskoy by GMCO. At any rate, the February 17, 1964, agreement prepared in Los Angeles, was not signed by Scherbatskoy or GMCO in Los Angeles, Scherbatskoy took the original and copies home with him and the agreement was never signed by the parties thereto and of course never delivered to anyone in executed form. Apparently it was never discussed further between the parties, or if so not to any appreciable extent. But it appears to be this event in Los Angeles that prompts the Plaintiff in this litigation to urge belatedly at the trial that the parties had never really had a meeting of the minds on the subject matter involved.

After the Los Angeles meeting and under date of March 2, 1964, Scherbatskoy executed license agreements to GMCO covering 65 nuclear radiation measurements patents owned by him. Reference was made in each licensing agreement to the February 20, 1964, licensing and patent payment letter between the parties, which letter was identical to the letter of February 15, 1964, both of which letters were signed in Las Vegas on February 15, 1964, as aforesaid. These licensing agreements for the 65 patents were also signed by GMCO, by E. W. Munson, vice president. Under date of March 18, 1964, Scherbatskoy by his attorney advised McCullough Tool of the aforesaid 65 license agreements and stated, "The delivery (of the 65 license agreements) to GMCO shall be considered as accomplished and effective today unless you advise us in the near future that you wish to adopt some other procedure or change the form or content of the instruments." McCullough Tool never responded to this letter.

On March 9, 1964, McCullough Tool advanced $10,000.00 by cashier's check to GMCO. On April 10, 1964, McCullough Tool advanced another $10,000.00 to GMCO by cashier's check. On August 20, 1964, L. A. Havens signed the annual franchise tax return for GMCO. He did this again in August, 1965, and August, 1966. On November 6, 1964, L. A. Havens signed the United States corporation income tax return for GMCO for the year ending August 31, 1964. On November 11, 1964, McCullough Tool by letter permitted employees of GMCO to participate in the McCullough Tool savings-retirement plan effective April 1, 1964. On February 11, 1965, annual meetings of stockholders and the board of directors of GMCO were held in Tulsa, Oklahoma. I. J. McCullough and L. A. Havens were present. The minutes show that all stock in GMCO was owned by McCullough Tool and was represented at the stockholders meeting by I. J. McCullough as proxy-

holder. All actions of the board of directors since the last annual meeting were ratified. The Company's financial statements were reviewed. The directors were re-elected. The activities of GMCO were reported on by Scherbatskoy. A vigorous program of patent rights enforcement by GMCO was approved. Dividends were discussed but none authorized. The same officers were re-elected at the same remuneration. L. A. Havens signed the minutes of both meetings. On April 6, 1965, I. J. McCullough by letter asked Scherbatskoy to sign a "Consent of Stockholders" document which was necessary in connection with a loan being obtained by McCullough Tool from Chase National Bank. On August 7, 1965, Scherbatskoy signed and returned said "Consent of Stockholders." On July 1, 1965, McCullough approved the form of a letter to be sent to a Company named Nuclear-Chicago Corporation in which letter Nuclear-Chicago Corporation was accused of violating certain GMCO patents and a request was made that said Company acquire a license on the same from GMCO. In this letter it was stated that GMCO was a wholly-owned subsidiary of McCullough Tool. By telegram, McCullough Tool authorized the mailing of this letter on July 10, 1966. As late as May 15, 1967, McCullough Tool in a pleading filed in a Federal Court proceeding in the Southern District of Texas admitted that Scherbatskoy had granted his patent licenses to GMCO.

■ The Court finds and concludes from the evidence herein that the parties had a written agreement and a meeting of the minds by which the said exchange of stock was agreed upon and accomplished, patent licenses were granted by Scherbatskoy to GMCO and GMCO was to pay Scherbatskoy certain stipulated royalties. This conclusion is clearly shown by the written documents signed by the parties to this effect at Las Vegas on February 15, 1964, and is further supported by their conduct throughout the months and years following the agreement. The Court believes that all the Las Vegas agreements (stock exchange and licenses and royalties) should be considered together as part of a single unified transaction. Patterson-Ballagh Corp. v. Byron Jackson Co., 145 F.2d 786 (Ninth Cir. 1944).

■ The Court further finds that a valid consideration passed between the parties for this agreement and that the Defendant has not breached any of the terms of the agreement. Patterson-Ballagh Corp. v. Byron Jackson Co., supra. The stock has been exchanged and the patent licenses have been granted and delivered all as agreed upon. McCullough Tool voiced no objection to the manner in which the grant of patent licenses was accomplished. Notwithstanding the Los Angeles event of February 17, 1964, the parties had previously signed duplicate written agreements on the matters contained in the Los Angeles draft which was not then or thereafter executed. The Court finds that the Los Angeles draft was dropped by the parties and any doubt that it may have cast on the previous duplicate written agreements of the parties about the granting of the patent licenses to GMCO and the payment of royalties by GMCO to Scherbatskoy is completely eliminated by the ensuing conduct and actions of the Plaintiff, which amounted to a ratification of the Las Vegas duplicated agreements regarding the grant of licenses and payment of royalties, which precludes judicial rescission of the unified Las Vegas agreement. 12 C.J.S. Cancellation of Instruments § 38, page 996; 13 Am.Jur.2d Cancellation of Instruments, Sec. 45, page 530. The Court further finds from the evidence that the Las Vegas agreement was not fraudulently induced by Scherbatskoy as claimed by the Plaintiff. Scherbatskoy did not promise to grant the patent licenses to GMCO with no intention of doing so. The evidence discloses that he made such grants to GMCO under date of March 2, 1964, and the Plaintiff was so notified and furnished a schedule thereof on March 18, 1964.

■ With reference to the plea of patent misuse raised by the Plaintiff during

the trial, the Court is not satisfied that patent misuse is present in the terms of the agreement of the parties concerning the royalties to be paid to Scherbatskoy by GMCO.[2] But it is not necessary to determine this matter in the disposition of this case. Plaintiff seeks in this case to rescind a contract between it and the Defendant, Scherbatskoy, an individual, and obtain from Scherbatskoy 36,475 shares of its stock which it had issued to Scherbatskoy and also to recover the $20,000.00 in cash advanced by McCullough Tool to GMCO. If there is patent misuse it existed between Scherbatskoy and GMCO and it does not invalidate the patents. Paul E. Hawkinson Co. v. Dennis, 166 F.2d 61 (Fifth Cir. 1948); Preformed Line Products Co. v. Fanner Manufacturing Co., 225 F.Supp. 762 (N.D. Ohio E.D.1962). It would only serve to benefit GMCO by depriving Scherbatskoy of the use of the courts to enforce his claim for royalties against GMCO which is *the only entity obligated to pay the same to Scherbatskoy.* Paul E. Hawkinson Co. v. Dennis, supra; Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942). Thus any patent misuse would not invalidate the stock exchange between McCullough Tool and Scherbatskoy and is only defensibly available to GMCO should Scherbatskoy attempt to collect royalties from GMCO. Moreover, if there is patent mis-

use, as soon as the Plaintiff verbally and belatedly raised patent misuse herein at the start of the trial the Defendant promptly purged himself of any patent misuse by agreeing to receive only those royalties which would be free of any such taint. McCullough Tool Co. v. Well Surveys, Inc., 343 F.2d 381 (Tenth Cir. 1965). No royalties have been paid. None have been sued for. It is not known if any are even due.

For the foregoing reasons, the Plaintiff has failed to establish that it is entitled to the relief sought herein and Plaintiff's cause of action herein should be dismissed.

■■ The Defendant has not shown himself to be entitled to recover his attorneys' fees herein nor to recover exemplary damages. One is entitled to recover attorneys' fees only pursuant to contract provisions or statute. The Defendant has shown neither. Joy v. Giglio, 208 Okl. 50, 254 P.2d 351 (1953). Exemplary damages are not recoverable for breach of an obligation arising from contract. 23 Oklahoma Statutes, 9; Colby v. Daniels, 125 Okl. 202, 257 P. 298 (1927). Nor does the Court grant the Defendant relief on his counterclaim except to declare the Las Vegas agreement of February 15, 1964, to be valid. Nothing has been presented to the Court to require an interpretation of the option provision in the contract. It appears to be perfectly clear.

2. Defendant argues that this was a bilateral merging of many patents into a single ownership and is not like the granting of a license by a patentee by which through prescribed conditions he obtains some monopolistic advantage for his patent. Defendant also urges that Scherbatskoy not only granted the 65 patent licenses to GMCO but as additional consideration agreed to furnish his technical know-how to GMCO and agreed to assign all his future patents in this field to GMCO. Defendant also points to a lack of coercion by Scherbatskoy. Lastly,

Defendant contends that the method of fixing royalties was a convenient and simple bookkeeping method and does not constitute misuse. The following cases are cited in support of these arguments: McCullough Tool Co. v. Well Surveys, Inc., 343 F.2d 381 (Tenth Cir. 1965); Patterson-Ballagh Corp. v. Byron Jackson Co., supra; Plastic Contact Lens Co. v. Butterfield, 366 F.2d 338 (Ninth Cir. 1966); Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950).