**HALL JONES OIL CORPORATION, Brooks Hall and Oklahoma and Northwestern Co., Plaintiffs in Error,**

v.

**Anthony CLARO, for himself and for all others similarly situated, Defendants in Error.**

**No. 41908.**

Supreme Court of Oklahoma.

July 22, 1969.

Rehearing Denied Oct. 21, 1969.

Monnet, Hayes, Bullis, Grubb & Thompson, Oklahoma City, William Vassar, Chandler, for plaintiffs in error.

Bert Barefoot, Jr., Edward Moler, and John Claro, Oklahoma City, Richard James, Stroud, for defendants in error.

HODGES, Justice.

Parties will be referred to as they appeared in the trial court. Plaintiffs filed suit in the district court of Lincoln County on behalf of himself and all others similarly situated. Plaintiff is the owner of approximately 26 acres of undivided minerals in the NW/4 of Section 18–T13N–R2E, Lincoln County and the other parties in this class action are the remainder of the mineral owners in the 158.64 acres contained in the NW/4 of Section 18. Defendants are the owners of oil and gas leases on NW/4 of Section 18, and the operator of a gas well known as Kimmel No. 1, that is located on the SW/4 of Section 7, which together with the NW/4 of Section 18 forms a 320 acre gas spacing unit in the lower Skinner formation. Defendants are also the owners of leases and operators of an offset well known as Petchinsky No. 1, located on the E/2 of Section 13–T13N–

R1E, which forms an adjacent gas spacing unit.

Plaintiff's action is based upon the tortious breach of an implied covenant of an oil and gas lease to prevent drainage. A second cause of action is alleged for punitive damages for the willful, malicious and fraudulent acts of the defendants in illegally producing oil from the Petchinsky well which drained oil from their land. The case tried to a jury resulted in a verdict for the plaintiffs for actual or compensatory damages in the amount of $29,388.86 and punitive damages in the amount of $25,000.00.

Defendants appeal from this jury verdict asserting sixty-six assignments of error which are briefed under thirteen separate propositions. Many of the propositions are directly related to the defendant's argument that plaintiff's cause of action is founded on fraud and misrepresentation, and can be disposed of upon a determination of that issue.

Plaintiff contends that his cause of action is based upon a tortious breach by the defendants of an implied covenant to protect against drainage. Defendants retort that plaintiff's designation of their cause of action "is mere double talk." They argue that regardless of the label, whether as one based upon fraudulent misrepresentation as proposed by the defendants, or based upon a tortious breach of an implied covenant as argued by plaintiff, it is still a cause of action in which plaintiff must prove the tort or fraudulent misrepresentation, and that he relied upon it.

As pointed out in the beginning, the defendants were the lessees of oil and gas leases on lands underlying the minerals of the plaintiffs, and were the operators of the Kimmel No. 1 gas well permitted under a 320 acre gas spacing unit. Based upon this relationship there is a contractual relationship with an implied covenant to protect against drainage. The plaintiff's petition alleges damages against the defendants for an intentional breach of this covenant. The petition stated that the defendants

were also the owners and operators of a well known as Petchinsky No. 1, which was located adjacent to their property under a separate gas spacing unit. They allege that this offset well drained oil from their property in violation of the implied covenant, and that this drainage was done deliberately and intentionally by the defendants, and that such acts amounts to a tortious breach of the lease contract. The petition also alleges that when the Petchinsky well was completed the defendants did not notify the Oklahoma Corporation Commission that the well was, in fact, an oil producing well, but instead "fraudulently and intentionally falsified its Completion Report" and reported it as a gas well, and then proceeded to "fictitiously" operate the well for 18 months and produced oil in excess of 125 barrels per day.

Defendants contend that if plaintiff's petition alleges a tort, it is a tort in fraud or misrepresentation. If so, it is a necessary prerequisite for recovery that plaintiff prove that he relied upon the fraud or misrepresentation, citing Jones v. Spencer, 197 Okl. 608, 173 P.2d 745; Allen v. Pendarvis, 60 Okl. 216, 159 P. 1117; Thompson v. Teel (1950), 204 Okl. 105, 227 P.2d 395; Littlefield v. Aiken, 130 Okl. 142, 265 P. 1054, to his detriment.

■ Defendants further contend that plaintiff knew of the oil production from the Petchinsky well before he purchased his minerals, and because of this knowledge the plaintiff was not mislead by the Completion Report and placed no reliance upon it when he purchased his mineral interest in the adjoining property. The fallacy of this defense is that plaintiff's cause of action is not based upon the intentional falsification of the Completion Report by the defendants, but rather their deliberate and intentional breach of an implied covenant to protect against drainage. The Completion Report submitted to the Corporation Commission is merely evidence to show a tortious conduct by the defendants in breaching their implied covenant against drainage. The fact that defendants attempted to conceal their tortious conduct is of no consequence. The liability would be the same if the intentional breach had been committed openly and in public display. The cause of action is not based upon fraud, misrepresentation or concealment upon which reliance thereon is a prerequisite for liability.

In discussing plaintiff's cause of action a further characterization is necessary. Defendants have also charged that this is not a case in which punitive damages are allowable. While the defendants argued under the proposition above discussed that plaintiff's cause of action sounds in tort for fraud and misrepresentation, they now argue that plaintiff's action is founded upon contract. In Colby v. Daniels, 125 Okl. 202, 257 P. 298, we construed our punitive damage statute and held that in an action for a breach of an obligation arising from contract, exemplary or punitive damages are not recoverable.

■ Conduct that is merely a breach of contract is, of course, not a tort. Nevertheless, a tort may arise in the course of the performance under a contract so that a breach of the contract may not be the gravamen of the action, but an intentional wrong may be. The contract in such case is the mere incident creating the relation furnishing the occasion for the tort and giving rise to an action ex delicto, especially where the acts constituting the breach are willful, designed, intentional, or malicious. Jackson v. Central Torpedo Co., 117 Okl. 245, 246 P. 426, 46 A.L.R. 338; Independent Torpedo Co. v. Carder, 165 Okl. 87, 25 P.2d 62; Morriss v. Barton, 200 Okl. 4, 190 P.2d 451. "[It] is well established that, where a breach of contract is permeated with tort, the injured person may elect to waive the contract and recover in tort; or, differently stated, although the relation between the parties may have been established by contract, express or implied, if the law imposes certain duties because of the existence of that relation, the contract obligation may be waived and an action in tort maintained for the violation of

such imposed duties." Hobbs v. Smith, 27 Okl. 830, 115 P. 347, 34 L.R.A.,N.S., 697. The key in the present instance is the infliction of intentional harm resulting in damage by means of an illegal act, without excuse or justification. Here the defendants knowingly and intentionally attempted to subvert and destroy the implied covenant to protect against drainage by the illegal production of oil on adjoining property. Under such circumstances, this conduct amounts to more than a contractual breach of the implied covenant. Such conduct is a tortious violation of their contractual obligations.

Defendants attack the judgment of the trial court in allowing the action to be brought as a class action inasmuch as there are only eleven royalty owners. Title 12 O.S. § 233, states as follows:

"When the question is one of common or general interest of many persons, or when the parties are very numerous and it may be impractical to bring them all before the court, one or more may sue or defend for the benefit of all."

In the case of Young v. West Edmond Hunton Lime Unit, Okl., 275 P.2d 304, this court interpreted the above statute in light of a suit involving royalty owners. In that case we said:

"Herein, there appears to be a complete similarity of the situation of the plaintiffs, royalty owners, and numerous others, owners of royalty interests within the unit. The legal questions raised in this action are of common or general interest to the many owners of royalty interests within the unit, and the character of the relief sought appears to be applicable to all. In these circumstances we hold the case is one falling within the provisions of the statute, supra, authorizing one to sue for the benefit of all."

In a case arising in the Western District of Oklahoma, Judge Bohannon, in applying the provisions of 12 O.S. § 233, to an action of accounting by fifteen named plaintiffs and other lessors similarly situated against common lessee for gas runs produced from certain oil and gas leases, held that the action was properly brought as a class action. Harding v. Cameron, 220 F.Supp. 466 (1963). In the present case we are also involved with lessors similarly situated who have been allowed to file a class action against a common lessee.

While we do not look with favor upon a class action with such a small number of members (eleven) as in the present case, we find no prejudicial error. We are of the opinion that any error of the trial court in allowing a class action was harmless in view of the circumstances present in the case. Here the issues and legal question are common to all, the defenses are the same, and the character of relief is applicable to all members of the class. Also, defendants objected to an attempt of the plaintiff to add party plaintiffs to the action. At the beginning of the trial plaintiff moved to join 5 additional royalty owners as party plaintiffs. Defendants objected, and plaintiff withdrew his motion. Under the facts and circumstances of this case and the failure of the defendants to show any prejudice resulting therefrom, we find no reversible error.

Defendants complain that a number of the instructions given by the court were erroneous. An examination of the instructions given and those refused, demonstrate that the trial court performed its function in giving instructions which covered the law of the case and amply presented the case to the jury.

Defendants complain of the compensatory damages as being excessive in accordance with the evidence and the court's instructions. There is evidence that the Petchinsky No. 1 drained oil from under plaintiff's land and that a prudent operator would have drilled a well on plaintiff's land. Considering this evidence together with the amount of oil illegally produced, we can not say that the jury was not justified in awarding the amount of compensatory damages it did.

The next question to be considered is whether the trial court excluded certain evidence of the defendants improperly. Defendants set out numerous examples of such evidence and offers of proof in their 123 page brief filed herein and it is sufficient for the purposes of this appeal to state that none of the defendants' evidence excluded by the learned trial judge was error of such nature as to require reversal of the judgment.

Defendants further raise the defense that a valid order of the Corporation Commission setting well spacing, prohibits them from drilling on the plaintiff's property to prevent drainage, inasmuch as plaintiff's property, the NW/4 of Section 18, and the SW/4 of Section 7, compose a gas well spacing unit that contains a producing gas well. Defendants assert that even if there had been a proper demand for drilling an offset well, that their experts had advised them that drainage occurred (which they deny), and that a prudent operator would have drilled the well, they still would have been prohibited from drilling such well for the reason that the well spacing as set forth by the Corporation Commission would have barred such drilling. Plaintiff in reply asserts that the defendants are required to seek administrative relief from orders that prohibit them from drilling additional wells to prevent drainage. Oklahoma has not decided this specific question. We feel, however, in view of the conduct of the defendant lessee, that it is not necessary to resolve this question. Here there was a falsification of the Completion Report filed with the Corporation Commission, and the defendants illegally produced more oil than their fair share under conditions that amounted to oppression, fraud or malice. Professor Merrill in Covenants Implied in Oil and Gas Leases, 2d Edition (1940) Section 111, pp. 259 and 260, in referring to fraudulent drainage said:

"* * * no doubt if the lessee owns the fee, or royalty interest, in the adjoining land and operates thereon to draw oil or gas from beneath the leased premises because he will get a larger share, at the same time blocking development on part of others by keeping the lease alive, there is both harsh dealings and sharp practice properly deserving to be called by the hard name of fraud. Similar comment may be made if his purpose is to favor one lessor at the expense of another."

We feel defendants' conduct amounts to harsh dealings and sharp practice properly deserving to be labeled fraudulent drainage.

The Corporation Commission's orders regarding spacing in the lower Skinner formation was in part based or continued on information that the defendants furnished. The defendants falsified and concealed information, as found by the jury. The defendants should not be permitted to benefit from their wrongdoing. Pan American Petroleum Corporation v. Hardy, Tex.Civ.App., 370 S.W.2d 904. Defendants surreptitiously produced more than five times the normal oil allowable for 18 months without informing the Corporation Commission of its productivity. To allow defendants to set up a defense that the rules and regulations of the Corporation Commission prevented them from complying with the request of plaintiff to drill an offset well on their property, and on the other hand themselves violate the rules and regulations of the Commission by knowingly and intentionally falsifying and concealing the true oil production from adjoining land, would be to reward wrongdoing.

Judgment affirmed.

IRWIN, C. J., and WILLIAMS, LAVENDER and McINERNEY, JJ., concur.

BLACKBIRD, J., concurs in part and dissents in part.

DAVISON and JACKSON, JJ., dissent.

DAVISON, Justice (dissenting in part).

I am unable to agree with the majority opinion insofar as it holds that the present case. presents proper and legal grounds for the maintenance of a class action.

In the present case there were eleven royalty owners who were proper parties to the action, seven of whom were residents of Oklahoma and the other four were residents of other states whose addresses were either known or easily ascertainable to the sole plaintiff.

The pertinent statute relied on by plaintiff for the maintenance of the suit in a Class Action is 12 O.S.1961, § 233, which provides:

"When the question is one of common or general interest of many persons, or when the *parties are very numerous,* and it may *be impracticable* to bring them all before the court, one or more may sue or defend for the benefit of all." (Emphasis added.)

The majority opinion relies heavily on the case of Young v. West Edmond Hunton Lime Unit, Okl., 275 P.2d 304. This case, in my opinion, is distinguishable from the present case because in the cited case it was stated that there were several hundred royalty owners in similar situations as the two plaintiffs, Young and his wife.

In the case of State ex rel. Tharel v. Board of County Commissioners of Creek County, 188 Okl. 184, 107 P.2d 542, a case which permitted a class action against many defendants it was stated:

"The statute was intended to cover just such a case as is here presented. There are several hundred, if not several thousand, members of the class. To join them all in one action would mean that the case could probably never be tried, as deaths, absences, and changes of interest would make it impossible to get service on all the parties and the case at issue as to all so it could be tried. To require that separate suits be filed against the members of the class would entail a multiplicity of suits so great as to clog the dockets of the courts of the county for many months and cause needless expense to the county. * * *"

In the case of Campbell v. Webb, 363 Mo. 1192, 258 S.W.2d 595, the court was dealing with twenty persons, who were sought to be represented in a class action. The court stated:

"Upon the record here, we must hold that the parties constituting the class action are not 'very numerous' within the meaning of Section 507.070, and that it was not for any other reason impracticable to bring them into court."

In Restatement, Judgments, Sec. 86, p. 416, defines a class action as follows:

"A class action is an illustration of a situation where it is not feasible for all persons whose interests may be affected by an action to be made parties to it. It was invented by equity for situations in which the number of persons having substantially identical interest in the subject matter or litigation is so great that it is impracticable to join all of them as parties, in accordance with the usual rules of procedure, and in which an issue is raised which is common to all of such persons. * * *"

In my opinion the case of Harding v. Cameron, D.C., 220 Federal Supp. 466, cited in the majority opinion, is not decisive of this particular question. In that case fourteen named plaintiffs brought the action for themselves and others similarly situated. The case involved a tort action by the fourteen named plaintiffs and who were royalty owners against the lessee for damages. The opinion relied on the case of Young v. West Edmond Hunton Lime Unit, supra. The opinion is silent as to the number of lessors or as to the impracticability of making all royalty owners parties. The trial court held that the cause was a proper class action maintainable by the plaintiffs. At the end of the opinion it was stated:

"Assuming, arguendo, that this case is not a class action, the rights of the named plaintiffs, and duties of the defendant, are as set forth above."

In my opinion it was not impracticable in the present action to have made the four non-residents of the state parties. It could have been that for some reason the four non-residents were not desirous of becom-

ing parties to the action. At least they should have been given an opportunity to determine the advisability of their entering the suit.

It is noted however that the seven residents of Oklahoma were present at the trial, either in person or by their respective spouses. On the day of trial they asked to be made parties plaintiff but for fear of error or a continuance being granted their request was withdrawn. Three of these parties testified for themselves and their wives, who were also royalty owners, that they had employed the attorneys who prosecuted the case to represent them.

I am of the view that, under the facts presented, the seven resident royalty owners should be entitled to share in the judgment in the proportion their respective interest bears to the 160 acres involved. I am of the further opinion that the class action was not proper for the four nonresident royalty owners and that they should be left in the position as if the present action had not been filed.

I therefore respectfully dissent in part.