Ronda SCRIBNER, Appellee,

v.

HILLCREST MEDICAL CENTER,
Appellant,

and

Dr. L. Khademol Reza, Defendant.

Nos. 75446, 76604.

Court of Appeals of Oklahoma,
Division No. 3.

Sept. 15, 1992.

Rehearing Denied Nov. 10, 1992.

Certiorari Denied March 17, 1993.

**438**

W. Michael Hill, Edward J. Main, Secrest & Hill, Oklahoma City, Reuben Davis, Frederic N. Schneider, III, William C. Kellough, Boone, Smith, Davis, Hurst & Dickman, Tulsa, for appellant.

W.C. Sellers, Jr., W.C. "Bill" Sellers, Inc., Oklahoma City, for appellee.

James L. Hall, Jr., Clyde A. Muchmore, Harvey D. Ellis, Jr., Crowe & Dunlevy, Oklahoma City, for amici curiae VHA of Oklahoma, Inc., and American Hosp. Ass'n.

Page Dobson, Ronald R. Hudson, Elizabeth J. Dunning, Holloway, Dobson, Hudson & Bachman, Oklahoma City, for amicus curiae Oklahoma Hosp. Ass'n.

Andrew L. Frey, Michael A. Vatis, Mayer, Brown & Platt, Washington, DC, Fredric J. Entin, James A. Henderson, Margaret J. Hardy, American Hosp. Ass'n, Chicago, IL, for amicus curiae American Hosp. Ass'n.

## MEMORANDUM OPINION

BAILEY, Presiding Judge:

In principal Case No. 75,446, Appellant Hillcrest Medical Center (Hospital) seeks review of judgment entered on jury verdict awarding $100,000.00 in actual damages and $10,000,000.00 in punitive damages to Appellee Ronda Scribner (Patient) in Patient's medical negligence action. In consolidated

Case No. 76,604, Hospital seeks review of the Trial Court's order denying Hospital's post-trial motion to vacate the judgment for punitive damages. In the principal appeal, Hospital alleges (1) failure of Patient's proof of causation, (2) error in instruction of the jury on the theory of res ipsa loquitur, (3) under several propositions, error in instruction and submission of the issue of punitive damages to the jury, and (4) excessiveness of the punitive damage award. In the consolidated action, Hospital asserts error of the Trial Court in denying Hospital's motion to vacate the punitive damage award, arguing unconstitutionality of Oklahoma's punitive damage statute, and again arguing excessiveness of the punitive damage award. Amici Curiae join in the attack on the award of punitive damages.

Patient underwent an apparently uncomplicated hysterectomy at Hospital under the surgical care of Defendant Dr. Reza on October 1, 1985, and Hospital placed Patient in Bed B of a semi-private room to recover. Hospital moved the patient occupying Bed A of the same room elsewhere in the facility in the early morning hours of October 2 but Hospital staff failed to note the move in its records.[1]

Later on the morning of October 2, within twenty-two hours of surgery, an orderly seeking the Bed A patient appeared at Patient's room[2] and announced his intention to take Patient to the ultrasound laboratory for testing. Patient protested that she had just come from surgery, had been instructed not to move without direction, and that she knew of no scheduled test. Nevertheless, the orderly persisted, and without checking Patient's identity,[3] the orderly lifted Patient from her bed, Bed B, to place her in a wheelchair. Patient testified she then felt excruciating pain and nearly passed out.

The orderly proceeded to take Patient to the ultrasound lab.

At the ultrasound laboratory, technicians there noticed Patient's weakened condition and obvious pain. Notwithstanding, and without checking Patient's identity, the technicians commenced the ultrasound procedure by introduction of cold water through a catheter into Patient's bladder. Patient testified she experienced a wave of cramp-like pain as a result. At that point, upon further remonstrations by Patient, the laboratory technicians determined Patient's true identity, discontinued the ultrasound procedure, and returned Patient to her room. The technicians, however, failed to notify Patient's attending Nurse of the mistake.[4]

Patient discharged from Hospital about a week after surgery. However, two days later, Patient suffered an incisional dehiscence[5] and hernia, necessitating further surgery, although Patient apparently sustained little or no permanent impairment as a result of the second surgery.

At trial, Patient presented testimony of the orderly that he ignored Patient's protests, that he did not check Patient's identification before taking her to the ultrasound laboratory, and demonstrating the orderly's ignorance of hospital procedures for patient identification. Patient also presented expert testimony tending to show causation of the incisional dehiscence attributable to strain and pulling during Patient's mistaken trip to the ultrasound laboratory. Patient also showed Hospital's net worth approaching $110,000,000.00.

Hospital presented testimony of other experts contradicting Patient's evidence of causation. Defendant Dr. Reza testified that abdominal distension suffered by Patient during the initial hospitalization caused a suture to tear, resulting in the incisional dehis-

1. Two shifts of nurses failed to note the move of the patient in the adjoining bed.

2. Notwithstanding having treated the Bed A patient in her new room, nursing staff directed the orderly the Patient's room to find the Bed A patient.

3. Patient wore a traditional hospital identification bracelet, and Patient's bed bore her name.

4. Only after confrontation by Patient's doctor was a notation of the mistake entered in Patient's records.

5. "A bursting open, splitting, or gaping along natural or sutured lines." Stedman's Medical Dictionary, 25th Ed. (Williams and Wilkens, 1990).

cence and hernia. Dr. Reza denied causal connection between the abandoned ultrasound procedure and the incisional dehiscence.

Based on the evidence, the Trial Court found Patient had clearly showed Hospital's "lackadaisical attitude" toward patient identification procedures, evincing "a reckless and wanton disregard of the rights of" Patient so as to potentially allow an award of punitive damages in excess of actual damages determined.[6] The Trial Court then instructed the jury on the issue of punitive damages over objection of Hospital.

The jury returned its verdict for Patient, awarding $100,000.00 in actual damages, and $10,000,000.00 in punitive damages. Hospital appealed judgment entered on jury verdict for Patient in principal Case No. 75,446. Hospital subsequently moved to vacate the award of punitives, which the Trial Court denied. Hospital appealed the order denying the motion to vacate in Case No. 76,604, and the matters have been consolidated for resolution.

■ We address Hospital's attack on Patient's proof of causation first. On this issue, Hospital asserts incompetency of Patient's expert testimony attributing causation of the incisional dehiscence to the strain and movement of the mistaken trip to the ultrasound laboratory as unsupported in medical literature[7] and contrary to all other expert testimony offered at trial. By this argument, however, Hospital in essence urges this Court to re-weigh the evidence of Patient's otherwise qualified experts, which we may not and will not do.[8] We therefore reject this allegation of error.

Next, Hospital attacks the award of punitive damages. In its first subproposition, Hospital argues the issue should not have been presented to the jury at all. In other words, while the conduct complained-of might be negligent, such conduct does not evince evil intent, the functional equivalent of such intent, or a conscious and knowing disregard of Patient's rights by Hospital so as to justify submission of the issue of punitive damages to the jury. In its related second subproposition, Hospital argues the complained-of conduct did not rise to the requisite level of culpability to justify lifting the punitive damages "cap" imposed by statute, that is, that the punitive damages award cannot exceed the amount of actual damages awarded.

■ An award of punitive damages is controlled by statute which provides:

A. In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant, in an amount not exceeding the amount of actual damages awarded. Provided, however, if at the conclusion of the evidence and prior to the submission of the case to the jury, the court shall find, on the record and out of the presence of the jury, that there is clear and convincing evidence that the defendant is guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, then the jury may give damages for the sake of example, and by way of punishing defendant, and the percentage limitation on such damages set forth in this section shall not apply.

B. The provisions of this section shall be strictly construed.

23 O.S.Supp.1986 § 9.

A party may be held liable for punitive damages under the "wanton or reckless disregard" standard if the party is shown to be

---

6. 23 O.S.Supp.1986 § 9.

7. See, e.g., *Downs v. Longfellow Corp.*, 351 P.2d 999 (Okl.1960) (weight of opinion no greater than reasons given in support thereof; opinion without rational basis has no probative force).

8. See, *Leeper v.' Thornton*, 344 P.2d 1101 (Okl. 1959) (where expert allowed to testify as such, soundness of his opinions, conclusions and deductions go to weight of testimony, not admissibility, and weight accorded such testimony for determination of trier of fact).

"aware of, or culpably indifferent to, unnecessary risk of injury." [9]

■ In the instant case, Patient presented evidence showing Hospital's adoption of policies for patient identification, supporting at least an inference that Hospital recognized the risk of injury to patients due to misidentification. Patient also presented evidence clearly demonstrating ignorance of or failure to adhere to the patient identification policies by Hospital nurses, the orderly, and laboratory technicians. The Trial Court found Patient's evidence of Hospital's indifference to its own patient identification procedures clearly and convincingly [10] supported a finding of conduct equivalent to "reckless disregard for the rights of another" warranting both submission of the issue of punitive damages to the jury [11] and lifting the statutory "cap" on punitive damages. We agree with the Trial Court's assessment of the evidence and reject these allegations of error.

In its third subproposition attacking the punitive damages award, Hospital urges error in the Trial Court's instruction to the jury concerning punitive damages [12] as (1) impermissibly deviating from the punitive damage instruction prescribed by the Oklahoma Uniform Jury Instructions–Civil [13] and (2) lacking direction to the jury on Patient's "heightened" burden of proof of entitlement thereto. In this subproposition, Hospital asserts that the statutory mandate requiring the Trial Court to find "clear and convincing" evidence of sufficiently egregious conduct as a condition to lifting the punitive damages "cap" requires Patient to adduce "clear and convincing" evidence of such conduct to justify an award of punitive damages, and Hospital maintains the Trial Court erred in failing to so instruct. In a separate proposition, Hospital also attacks the Trial Court's instruction to the jury on the theory of res ipsa loquitur.

As to the Trial Court's instruction regarding punitive damages, we first note the Trial Court's instruction is nearly identical to the OUJI instruction, the Trial Court merely omitting non-applicable language from the OUJI version, and we find no error thereby. Second, Hospital did not request a "clear and convincing" instruction to be given, and Hospital's requested instruction [14] did not accu-

---

9. *Thiry v. Armstrong World Industries*, 661 P.2d 515, 518 (Okl.1983).

10. "Clear and convincing" evidence is that which supports a conclusion free from serious or substantial doubt of correctness. Black's Law Dictionary (5th Ed., West, 1979).

11. *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 918 (Okl.1982) (person may commit such wilful acts in reckless disregard of another's rights that malice may be inferred). See also, e.g., *Mitchell v. Ford Motor Credit Co.*, 688 P.2d 42 (Okl.1984) (reckless disregard); *Dilworth v. Fortier*, 405 P.2d 38 (Okl.1965) (gross negligence or reckless disregard).

12. The Trial Court's instruction provided:
If you find in favor of [Patient] and grant her actual damages, and if you find the conduct of [Hospital] amounted to a wanton or reckless disregard for the rights of another, then you may, in addition to actual damages, grant exemplary damages in such sum as you reasonably believe will punish and be an example to others.
Exemplary damages are not to be construed as compensation to the [Patient], but as a punishment to the Defendants, and as an example to others to deter them like conduct.

13. The Oklahoma Uniform Instruction on punitive damages provides:

If you find in favor of Plaintiff (name), and grant him actual damages, and if you find the conduct of Defendant, (name), (was or amounted to):
Fraud;
Oppression;
Gross negligence;
Malice (actual or presumed);
Evil intent;
Reckless and wanton disregard of another's rights;
as defined herein, then you may, in addition to actual damages, grant Plaintiff, (name), exemplary damages in such sum as you reasonably believe will punish Defendant, (name), and be an example to others.
Exemplary damages are not to be construed as compensation to the Plaintiff, (name), but as *punishment to the Defendant*, (name), and as an example to others to deter them like conduct.
In no event should the exemplary damages exceed ____.
OUJI–Civ. No. 5.5.

14. Hospital's requested instruction on burden of proof for punitive damages directed that "punitive damages may be imposed only where the evidence plainly shows oppression, fraud, malice or gross negligence."

rately state the law.[15] The punitive damage instruction given by the Trial Court appears otherwise free of fundamental error,[16] and we find no error as alleged in this proposition.

As to the Trial Court's instruction on res ipsa loquitur, we likewise find no error. Under that doctrine, negligence may be inferred from the mere happening of an accident upon a showing that (1) the injury-causing instrumentality was under the exclusive care and control of the defendant and (2) the event causing the injury was of a kind which does not ordinarily occur in the absence of negligence.[17] As we view the record, we find presentation of some expert evidence by Patient attributing cause of Patient's incisional dehiscence and attendant second surgery to the stress and strain of the unnecessary trip to the ultrasound lab which would not have occurred if Hospital patient identification procedures had been followed. Even Hospital admits a mistake in this regard. Under these circumstances, we cannot say the Trial Court erred in giving a res ipsa loquitur instruction.

In its fourth subproposition of the principal appeal attacking the award of punitive damages, and again on appeal from the order denying Hospital's motion to vacate, Hospital challenges the constitutionality of the Oklahoma punitive damage statute, arguing the statute lacks a sufficient definition of both (1) culpable conduct and (2) limits of jury discretion on the amount of punitive damages allowable, in violation of Hospital's due process rights.[18] Under this proposition, Hospital asserts the due process guarantee protects against such "grossly excessive," "severe and oppressive" damage awards.

We find the United States Supreme Court has recently discussed this issue.[19] While not addressing the more general question of "whether 'undue jury discretion to award punitive damages' violates the due Process Clause of the Fourteenth Amendment," [20] the Supreme Court found no due process violation in a punitive damage award under jury instruction in accord with Alabama law,[21] reasoning:

> So far as we have been able to determine, every state and federal court that has considered the question has ruled that the common-law method for assessing punitive damages does not in itself deny due process. (Citation omitted.) In view of this consistent history, we cannot say that the common-law method of assessing punitive damages is so inherently unfair as to deny due process and be *per se* unconstitutional.... Nothing in the [Fourteenth] Amendment's text or history indicates an intention on the part of its drafters to overturn the prevailing method. (Citations omitted.)

.     .     .     .     .

> ... The instruction ... enlightened the jury as to the punitive damages' nature and purpose [deterrence and retribution, valid state concerns], identified the damages as punishment for civil wrongdoing of the kind involved, and explained that their imposition was not compulsory.

> These instructions ... reasonably accommodated [defendant's] interest in rational decision making and [the state's] interest in meaningful individualized assessment of appropriate deterrence and retribution. The discretion allowed under [state] law in determining punitive dam-

15. *Timmons*, 653 P.2d at 914, 918 (where trial court instructs generally, and party desires more specific instruction, party has duty to request more specific instruction; "[i]f a requested instruction is objection[able] in any respect, refusal to so charge the jury with the instruction is not error.")

16. See, e.g., *Croy v. Bacon Transport Co.*, 604 P.2d 136 (Okl.1979).

17. 76 O.S.1991 § 21; *St. John's Hospital & School of Nursing v. Chapman*, 434 P.2d 160 (Okl.1967).

18. U.S. Const., Amendment XIV; Okl. Const., Art. 2, § 7.

19. *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).

20. *Pacific Mutual Life Ins. Co.*, 499 U.S. at 24, 111 S.Ct. at 1046 (Scalia, J. concurring in judgment).

21. *Pacific Mutual Life Ins. Co.*, 499 U.S. at 19–22, 111 S.Ct. at 1044–1045.

ages is no greater than that pursued in many familiar areas of law as, for example, deciding "the best interests of the child," or "reasonable care," or "due diligence," or appropriate compensation for pain and suffering or mental anguish. (Footnote omitted.) As long as the discretion is exercised within reasonable constraints, due process is satisfied. (Citations omitted.)

*Pacific Mutual Life Ins. Co.,* 499 U.S. at 19–20, 111 S.Ct. at 1044.

█ As applied to the present case, we observe that the instruction given in *Pacific Mutual Life Ins. Co.* is nearly identical to that given in the instant case,[22] "enlighten[ing] the jury as to the punitive damages' nature and purpose, identif[ying] the damages as punishment for civil wrongdoing of the kind involved, and explain[ing] that their imposition was not compulsory."[23] Because the Oklahoma punitive damage statute specifically restricts such an award to cases of particularly egregious conduct for the purposes of punishment and deterrence and does not compel an award thereof in any certain case, under the U.S. Supreme Court's rationale we hold the Oklahoma punitive damage statute is not violative of Hospital's due process guarantees for lack of definition of culpable conduct or limits on jury discretion as alleged.

█ In a related argument, Hospital also claims that Oklahoma law unconstitutionally lacks substantive standards of review for awards of punitive damages, both at the trial level and on appeal, also in violation of Hospital's due process rights. However, the U.S. Supreme Court tacitly rejected this allegation in *Pacific Mutual Life Ins. Co.,* holding only that:

> ... [G]eneral concerns of *reasonableness and adequate guidance* ... *to the jury* properly enter the constitutional calculus.

499 U.S. at 18, 111 S.Ct. at 1043. (Emphasis added.)

Under this pronouncement, we discern no constitutional due process violation in the "grossly excessive" or "influenced by passion, prejudice or sympathy" standards of review for punitive damages employed in this state.[24] Application of both standards contemplate consideration of the *reasonableness* of the award in relation to, for example, (1) cause and extent of injury,[25] (2) the deterrence objective of punitive damages,[26] (3) the actual damages awarded,[27] (4) net worth of the defendant,[28] and (5) the nature and egregiousness of defendant's conduct,[29] standards implicitly recognized as proper for consideration by the United States Supreme Court.[30] The Trial Court undertook a review of the punitive damage award under the same standards as this appellate court on Hospital's motion to vacate and, contrary to Hospital's allegations, we hold the standards of review applied meet due process safeguards.

---

**22.** *Pacific Mutual Life Ins. Co.,* 499 U.S. at 6, fn. 1, 111 S.Ct. at 1037, fn. 1.

**23.** *Pacific Mutual Life Ins. Co.,* 499 U.S. at 19, 111 S.Ct. at 1044.

**24.** See, e.g., *Buzzard v. Farmers Ins. Co., Inc.,* 824 P.2d 1105 (Okl.1991); *Chandler v. Denton,* 741 P.2d 855 (Okl.1987); *Timmons,* 653 P.2d at 915.

But cf., *Pacific Mutual Life Ins. Co.,* 499 U.S. at 21, fn. 10, 111 S.Ct. at 1045, fn. 10.

**25.** See, e.g., *Hobbs v. Watkins,* 481 P.2d 746 (Okl.1970).

**26.** See, e.g., *Buzzard,* 824 P.2d at 1116 ("[T]he large award of punitive damages was likely a result of 'an improper sympathetic response ... larger than reason dictates to be necessary to deter such conduct in this defendant and others similarly situated.' ")

**27.** *Chandler,* 741 P.2d at 868 ("In light of the generously and amply compensated loss for Chandler's actual harm, we find the exemplary damages allowed by the jury not to be responsive to the purpose of civil punishment.")

**28.** *Mitchell,* 688 P.2d at 46; *Thiry,* 661 P.2d at 518. See also, *Basden v. Mills,* 472 P.2d 889 (Okl.1970) (in absence of evidence of defendant's net worth, remittitur of punitive damages ordered).

**29.** *Timmons,* 653 P.2d at 915 (punitive damages held "partially the result of the combined impact of the several wrongful and willful acts of the defendants and combined effect of these items of evidence influenc[ing] the jury ... [and] creat[ing] an improper sympathetic response of a damages award larger than reason dictates to be necessary to deter such conduct.")

**30.** *Pacific Mutual Life Ins. Co.,* 499 U.S. at 19–20, 111 S.Ct. at 1044.

Hospital also asserts invalidity of the award as contrary to the constitutional prohibitions of excessive fines.[31] As before, we find Hospital's allegation of violation of the excessive fine prohibition controlled by U.S. Supreme Court decision.[32] In that case, the Supreme Court held:

> ... [T]he Excessive Fines Clause applies just to criminal cases. Whatever the outer confines of the Clause's reach may be, we now decide ... that it does not constrain an award of money damages in a civil suit when the government neither has prosecuted the action nor has any right to receive a share of the damages awarded. To hold otherwise, we believe, would be to ignore the purpose and concerns of the Amendment, as illuminated by its history.

*Browning–Ferris Industries of Vermont,* 492 U.S. at 263–64, 109 S.Ct. at 2914.

The U.S. Supreme Court reasoned that the Constitutional drafters intended the Excessive Fines Clause to prohibit excessive payments to "a sovereign as punishment for some offense," and to "plac[e] limits on the powers of the new government."[33] Applying this reasoning to the instant case, and considering the identity of language in the Eighth Amendment to the U.S. Constitution and Art. II, § 9 of the Oklahoma Constitution, we are similarly persuaded that the Oklahoma Constitutional drafters expressed the same intent to restrict the powers of state government, and did not propose by Art. II, § 9 to limit damage awards in disputes between private individuals. We therefore find the Excessive Fines Clause of the Oklahoma Constitution inapplicable to this controversy.

In its fifth subproposition, Hospital alleges immunity from liability for punitive damages as a "not-for-profit," tax exempt corporation. However, and notwithstanding any tax exemption to which Hospital might be entitled for its "charitable" works,[34] such corporations enjoy *no* immunity "from liability for torts by reason of any exemption accorded them."[35] We therefore reject Hospital's claim of immunity from punitive damages.

In a related argument advanced both in the principal and consolidated appeal, Hospital asserts improper argument of Patient and counsel inflaming the jury. By this argument, Hospital maintains Patient should not have been allowed to give an opening statement *pro se.* Hospital also claims Patient's counsel, throughout the trial, repetitively and improperly employed prejudicial remarks and argument to inflame the jury and inflate Patient's damages award.[36] However, we find no reversible error arising from Patient's *pro se* opening statement.[37] Nor do we find any reversible error arising from counsel's alleged prejudicial remarks,[38] to the

---

31. Okl. Const., Art. II, § 9. See also, U.S. Const., Amendment VIII.

32. *Browning–Ferris Industries of Vermont v. Kelco Disposal,* 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989).

33. *Browning–Ferris Industries of Vermont,* 492 U.S. at 266, 109 S.Ct. at 2915.

34. 26 U.S.C.S. § 501(c)(3) (Lawyer's Co-op, 1992).

35. *Gable v. Salvation Army,* 186 Okl. 687, 100 P.2d 244 (Okl.1940).

36. Hospital variously complains that counsel improperly (1) "harped on the theme of [Hospital] as an unfeeling, impersonal corporation," (2) confused the jury with his imprecise "per diem" and other suggested mathematical means of calculating Patient's damages, (3) asked the jurors

to "to identify [Patient] with the general community and ... to place themselves in the position of [Patient]," and (4) interjected argument into the voir dire process.

37. See, e.g., *Funnell v. Funnell,* 737 P.2d 105 (Okl.1985); *Jefferson v. British American Oil Producing Co.,* 193 Okl. 599, 145 P.2d 387 (1944); *Rourke v. Myers,* 184 Okl. 46, 84 P.2d 639 (1938); *Oklahoma State Bank of Ada v. Mitchell,* 179 Okl. 567, 66 P.2d 920 (1937).

38. Judgment will not be reversed for improper argument of counsel unless it is clearly shown that improper remarks influenced the verdict. See, e.g., *Middlebrook v. Imler, Tenny & Kugler, M.D.'s, Inc.,* 713 P.2d 572 (Okl.1985); *Willis v. Fried,* 629 P.2d 1255 (Okl.1981). See also, *Mikel Drilling Co. v. Dunkin,* 318 P.2d 435 (Okl.1957) (clear showing of prejudice required for reversal); accord, *Beck v. Day,* 178 Okl. 310, 62 P.2d 1014 (1937).

vast majority of which Hospital failed to object at trial,[39] and we cannot say the remarks rise to the level of plain error as Hospital avers.[40] We therefore reject these allegations.

■ Hospital also claims improper consideration of Hospital's net worth leading to an inflated and excessive punitive damage award. In this allegation, Hospital argues "the verdict was excessive due to bias on the part of the jury because its members knew [Hospital] had a 'deep pocket.'"[41] However, Oklahoma law has consistently allowed consideration of a defendant's net worth for purposes of assessing punitive damages.[42]

In its last proposition, Hospital again complains of the size of the verdict for punitive damages as "clearly excessive" and "influenced by passion and prejudice." So, says Hospital, the punitive damages award must be reversed (or minimally) reduced by remittitur. On this issue, the Oklahoma Supreme Court has recognized:

> Punitive damages are allowed for the benefit of society as punishment. They are designed to provide a restraint upon the transgressor and to serve as a warning and example to the wrongdoer. (Footnote omitted.) A punitive damages verdict lies peculiarly within the province of the jury and it will not be casually interfered with on appeal when it is claimed to have been actuated by passion or prejudice. (Footnote omitted.) Unless the verdict appears

to be *grossly excessive or the result of the jury's passion, prejudice or improper sympathy,* it will not be conditioned on remittitur. But *where an award is found so out of proportion as to be unconscionable, a conditional affirmance, subject to remittitur, may be required.*

*Chandler,* 741 P.2d at 868. (Emphasis added.)[43]

The Oklahoma Supreme Court has directed remittitur in few cases under the "grossly excessive," "influenced by passion, prejudice or improper sympathy" standards. In *Chandler v. Denton,* the jury awarded $600,000 in actual damages and $500,000 in punitive damages. The Supreme Court directed remittitur of punitive damages in excess of $250,000, finding:

> ... The $600,000 [actual damages] recovery ... is ... ample and generous. When the $500,000 punitive damages award is added to the other amounts recovered, the total verdict becomes so grossly excessive that we cannot in reason allow it to stand. In light of the generously and amply compensated loss for Chandler's actual harm, we find the exemplary damages allowed by the jury not to be responsive to the purpose of civil punishment.

*Chandler,* 741 P.2d at 868.

In *Buzzard v. Farmers Ins. Co., Inc.,* the jury awarded $200,000.00 in actual damages ("not an insignificant sum"[44]) for "distress occasioned by withholding a $10,000.00 insur-

**39.** See, e.g., *Bane v. Anderson, Bryant & Co.,* 786 P.2d 1230 (Okl.1989).

**40.** 12 O.S.1991 § 2104(D).

**41.** *Smith v. United States Gypsum Co.,* 612 P.2d 251, 255 (Okl.1980).

**42.** *Woods Petroleum Corp. v. Delhi Gas Pipeline Corp.,* 700 P.2d 1023 (Okl.App.1983); *Mitchell,* 688 P.2d at 46; *Thiry,* 661 P.2d at 518; *Smith,* 612 P.2d at 255; *Chowins v. Gypsy Oil Co.,* 185 Okl. 630, 95 P.2d 586 (1939); *Smith v. Autry,* 69 Okl. 28, 169 P. 623 (1918); *Willet v. Johnson,* 13 Okl. 563, 76 P. 174 (1904).

As Justice O'Connor has observed:
 ... The 'Constitution does not require the States to subscribe to any particular economic theory.' *CTS Corp. v. Dynamics Corp. of America,* 481 U.S. 69, 92, 107 S.Ct. 1637, 1652, 95 L.Ed.2d 67. ... Blackstone remarked that the '*quantum,* in particular, of pecuniary fines neither can, nor ought to be, ascertained by any invariable law. The value of money itself changes from a thousand causes; and at all events, what is ruin to one man's fortune, may be a matter of indifference to another's.' 4 Blackstone Commentaries *371.
*Browning–Ferris Industries of Vermont,* 492 U.S. at 300, 109 S.Ct. at 2933.
And cf., *Basden,* 472 P.2d at 891, fn. 24, supra.

**43.** See also, *Buzzard,* 824 P.2d at 1116; *Timmons,* 653 P.2d at 915.

**44.** 824 P.2d at 1116.

ance payment," and $2,000,000.00 in punitive damages for bad-faith breach of the insurance contract. The Supreme Court directed remittitur of $1,600,000.00 in punitive damages, finding:

> [T]he large award of punitive damages was likely a result of 'an improper sympathetic response ... larger than reason dictates to be necessary to deter such conduct in this defendant and others similarly situated.'

*Buzzard,* 824 P.2d at 1116.

In *Timmons v. Royal Globe Ins. Co.,* the jury awarded about $9,000 in actual damages, $25,000 for mental pain and suffering and $3,000,000 in punitive damages for breach of duty of fair dealing and good faith. In directing remittitur of $1,500,000.00 in punitive damages, the Supreme Court held:

> ... [The] purpose [of an award of punitive] damages is to restrain the defendant and to deter other from the commission of similar wrongs. Upon review, such damages will not be held excessive unless it appears they are grossly so, or the result of passion, prejudice, or improper sympathy. It is the solemn and considered judgment of this Court that three million dollars awarded as punitive damages is partially the result of the combined impact of the several wrongful and willful acts of the defendants and that the combined effect of these items of evidence influenced the jury so as to create an improper sympathetic response of a damages award larger than reason dictates to be necessary to deter such conduct in this defendant and others similarly situated. Thus the award is held not to be properly responsive to the legiti-

mate objective of a punitive damage award,....

*Timmons,* 653 P.2d at 915.

■ Under the direction of these cases,[45] we have reviewed the evidence and argument of counsel at trial of the instant matter. We are of the opinion that the $10,000,000.00 punitive damage award in the present case is "larger than reason dictates to be necessary to deter such conduct in this defendant and others similarly situated," is "not ... properly responsive to the legitimate objective of a punitive damage award,"[46] and is "so ... excessive that we cannot in reason allow it to stand."[47] We therefore hold the $10,000,000.00 award of punitive damages should be affirmed, conditioned on remittitur of $5,000,000.00 thereof. If Patient fails to file such remittitur, the entire judgment on jury verdict should be reversed, and the matter remanded for new trial.

The order of the Trial Court denying Hospital's motion to vacate and judgment entered on jury verdict is therefore AFFIRMED, conditioned on remittitur of punitive damages of $5,000,000.00.

HANSEN, V.C.J., and HUNTER, J., concur.

---

**45.** In *Timmons,* the Supreme Court expressed concern that the "combined impact of the [evidence] of the several wrongful ... acts of the defendants ... influenced the jury ... to create an improper sympathetic response of a damages award larger than reason dictates" in reaching a conclusion for remittitur. 653 P.2d at 915. In *Buzzard,* the Supreme Court expressed similar concerns in ordering remittitur. 824 P.2d at 1116. We are likewise concerned in the instant case that the "combined impact" of (1) the evidence of Hospital's indifference to the risk of injury to patients due to misidentification and (2) counsel's impassioned argument similarly "influenced the jury ... to create an improper sympathetic response," and resulting in a "damage award larger than reason dictates."

**46.** *Timmons,* 653 P.2d at 915.

**47.** *Chandler,* 741 P.2d at 868.