2001 OK CIV APP 98

Dr. Brett **BOATSMAN**, **Plaintiff/Appellee,**

v.

**SOUTHWESTERN BELL YELLOW PAGES, INC., Defendant/Appellant.**

**No. 93,619.**

Court of Civil Appeals of Oklahoma, Division No. 1.

June 22, 2001.

Ken Felker, Lori A. Sander, Ken Felker & Associates, Oklahoma City, for Appellant.

Chandra L. Holmes, John P. Zelbst, John P. Zelbst Law Firm, Lawton, for Appellee.

## SUBSTITUTE OPINION AFTER REHEARING

CARL B. JONES, J.

¶ 1 Defendant/Appellant Southwestern Bell Yellow Pages, Inc. (SWBYP) seeks review of the trial court's order denying SWBYP's motions for new trial and/or remittitur after the jury's verdict for Plaintiff/Appellee Dr. Brett Boatsman on Boatsman's negligence claim. In this appeal, SWBYP challenges the trial court's order for error in the admission of evidence at trial, in the jury's verdict for compensatory and punitive damages as affected by error of both law and fact, and in denying remittitur of grossly excessive damages.

¶ 2 In May 1993, Boatsman—a young veterinarian—went to work for Oak Ridge Animal Center. At about the same time, Boatsman also established a separate mobile equine practice.

¶ 3 In the fall of 1993, SWBYP solicited Boatsman to advertise both his Oak Ridge and mobile practice in the yellow pages. Boatsman orally agreed to purchase an ad in the 1993–94 yellow pages, and—according to Boatsman's uncontroverted testimony— SWBYP agreed to contact Boatsman the following year—prior to republication of the ad—for possible renewal of his ad in the 1994–95 yellow pages. Although a representative of SWBYP maintained that its normal business practice did not require notice to and approval of ad renewal by a subscriber, SWBYP adduced no evidence of any notice to/approval of renewal by Boatsman,[1] and Boatsman recalled no notice or approval of the renewal of his yellow pages advertisement for ensuing years as agreed.

¶ 4 In June 1994, Boatsman left Oak Ridge and began working for Southwest Veterinary Clinic; accordingly, Boatsman changed his address and phone number, including the phone number for his mobile equine practice. In the fall of 1994, Boatsman discovered that although Southwestern Bell correctly listed his new address and phone numbers in the 1994–95 white pages, SWBYP had reprinted Boatsman's previous ad in the 1994–95 yellow pages listing his prior—and now incorrect—address and phone numbers.

¶ 5 SWBYP billed Boatsman for the 1994–95 yellow pages ad and demanded payment. Boatsman responded, complaining of the ad error on several occasions, but for over six months, SWBYP continued to demand payment for the "past due" amount, and ultimately referred Boatsman's account to an agency for collection.

¶ 6 In September 1995, SWBYP acknowledged its mistake, and promised to both cease collection efforts and credit Boatsman's account for the subsequent, incorrect yellow pages ad. Indeed, the same month, SWBYP again solicited Boatsman to renew his ad in the 1995–96 yellow pages. Boatsman testi-

fied he specifically declined the invitation, but the SWBYP representative testified its records reflected no such response from Boatsman.

¶ 7 SWBYP consequently published the same incorrect ad for Boatsman in the 1995–1996 yellow pages, and sought to collect from Boatsman. In early 1996, Boatsman commenced the instant action, alleging SWBYP's negligent and reckless publication of the incorrect ads in the 1994–95 and 1995–96 yellow pages. In April 1996, after learning of commencement of this suit, SWBYP ceased collection efforts, and removed all charges and late fees from Boatsman's account.

¶ 8 After lengthy discovery and at least one pre-trial conference, the matter came on for trial on the merits to a jury. Prior to hearing, Boatsman sought to amend the pre-trial order to include his claim for punitive damages, raised initially in his original petition, but apparently, inadvertently omitted from the issues framed by the pre-trial order. SWBYP objected, asserting—apparently for the first time in the proceedings—that Boatsman's claim sounded predominantly in contract for breach of which the law granted no right to recovery of exemplary damages; SWBYP also asserted the parties' "contract" specifically limited its liability for damages arising from the publication of yellow pages advertising. The trial court allowed Boatsman to amend, and SWBYP agreed to accept a three-day continuance for preparation to meet the punitive damages claim, which the trial court granted.

¶ 9 Upon subsequent presentation of the parties' respective proofs, the trial court submitted to the jury Boatsman's negligence claim (without objection by SWBYP), and SWBYP's contract-based limitation-of-damage defense. On consideration of the evidence, the jury returned a verdict for Boatsman, awarding almost $42,000.00 in actual damages, and just over $58,000.00 in punitive damages. SWBYP filed a motion for new trial, one or more amended motions for new trial, and a motion for remittitur, which the trial court denied in all respects. SWBYP appeals.

---

1. Indeed, SWBYP adduced no evidence demonstrating any agreement for yellow pages advertising other than the oral agreement to which Boatsman testified.

¶ 10 SWBYP first contends that Boatsman's claims sound entirely in contract, not in tort, and here on appeal, argues the law required the trial court to submit the case to the jury strictly as a contract action. Further, says SWBYP, Boatsman is entitled to damages, if any, only for a breach of the contract for yellow pages advertising as limited by the specific terms of the parties' alleged contract.

¶ 11 In the present case, Boatsman's original petition alleged SWBYP's negligence causing injury. For the more than two years of discovery and pre-trial preparation, the parties proceeded on this theory. The pre-trial conference order lists Boatsman's various allegations of negligence and SWBYP's asserted common law defenses. In chambers following a hearing on SWBYP's pre-trial motion in limine, the trial court and counsel agreed Boatsman's claim did *not* sound in contract. At the close of Boatsman's case in chief, SWBYP again challenged the claim as sounding predominantly in contract, but during/after an in-camera hearing, SWBYP admitted it had not contested Boatsman's claim as other than one in tort. Further, the trial court both allowed SWBYP—over Boatsman's strenuous objection—to present evidence of the terms of the parties' alleged contract, and instructed the jury on SWBYP's contract defense.

¶ 12 In this respect:

> Where the transaction complained of had its origin in a contract which places the parties in such a relation that in attempting to perform the promised service the tort was committed, then the breach of the contract is not the gravamen of the action. The contract in such case is mere inducement, creating the state of things which furnishes the occasion of the tort, and in all such cases the remedy is an action "ex delicto" and not an action "ex contractu."

*Jackson v. Central Torpedo Co.,* 1926 OK 434, 117 Okla. 245, 246 P. 426, 428.[2] Moreover, a party who has acquiesced to the trial of a controversy on a particular theory may not complain thereof on appeal. *See, e.g., Great Plains Federal Sav. and Loan Ass'n v. Dabney,* 1993 OK 4, ¶ 1, 846 P.2d 1088, 1089, fn. 2; *Standard Marine Ins. Co., Limited, of Liverpool v. Traders' Compress Co.,* 1915 OK 284, 46 Okla. 356, 148 P. 1019, 1020.

¶ 13 In the present case, (1) Boatsman never alleged anything other than a tort theory of recovery, (2) the parties never treated the claim as otherwise than sounding in tort throughout the pre-trial proceedings, and (3) SWBYP twice confessed Boatsman's allegations as sounding purely in tort. Moreover, SWBYP tendered proposed negligence instructions, and did not object to the instructions as given. The trial court instructed the jury in accord with both Boatsman's negligence theory, SWBYP's requested negligence instructions, and SWBYP's evidence and request for instructions on the asserted contract defenses. We therefore reject this proposition.

¶ 14 SWBYP also asserts the jury's verdict for compensatory damages is not supported by the evidence. Here, SWBYP argues the alleged contract between the parties specifically limited SWBYP's liability; the damages awarded went beyond "the bounds of legitimate contractual recovery"; and that the damages awarded were, in any event, impermissibly speculative.

¶ 15 We have previously held SWBYP's appellate assertion of its contractual defenses unavailing. Further, while we agree that Oklahoma statute, 23 O.S. § 21, requires proof of contract damages with reasonable specificity, a claim for lost profits need not be proven with absolute certainty:

> [I]n essence, what a Plaintiff must show for the recovery of lost profits is sufficient certainty that reasonable minds might believe from a preponderance of the evidence that such damages were actually suffered.

*Florafax Int'l. v. GTE Market Resources,* 1997 OK 7, ¶ 42, 933 P.2d 282, 296.

**2.** *Accord, Oklahoma Natural Gas Co. v. Pack,* 1939 OK 475, ¶ 0, 186 Okla. 330, 97 P.2d 768. *Hall Jones Oil Corp. v. Claro,* 1969 OK 113, ¶ 9, 459 P.2d 858, 861–862; *Burton v. Juzwik,* 1974 OK 80, ¶ 16, 524 P.2d 16, 19; *Woods Petroleum Corp. v. Delhi Gas Pipeline Corp.,* 1983 OK CIV APP 26, ¶ 16, 700 P.2d 1023, 1027. *And see, Lucas v. Canadian Valley Area Vocational Technical School of Chickasha, Dist. No. Six,* 1992 OK CIV APP 1, ¶ 11, 824 P.2d 1140, 1142.

¶ 16 In the present case, Boatsman proffered evidence of the number of new clients obtained through the correct 1993–94 ad, the drop in the number of new clients in the two years in which SWBYP published incorrect information in the yellow pages, the testimony of two independent witnesses who were unable to obtain Boatsman's correct phone number and/or address, and the renewal of a new client base when SWBYP finally published the correct information; from his own books and records, Boatsman was then able to extrapolate lost profits. Having reviewed the record, we find Boatsman demonstrated lost profits with sufficient certainty, i.e., by facts "from which damages may be logically and legally shown and inferred." *Carpenters' Local 1686 v. Wallis,* 1951 OK 293, ¶ 13, 237 P.2d 905, 908.

■ ¶ 17 SWBYP also complains of the trial court's admission of Boatsman's 1996 and 1997 tax returns offered in support of his compensatory damage claim. While SWBYP admits these items were listed on the pretrial conference order, SWBYP avers it never received copies thereof prior to trial, and accordingly suffered reversible prejudice by their admission.

■ ¶ 18 Ordinarily, the relevance and admissibility of evidence constitute matters addressed to the sound discretion of the trial court whose rulings thereon will not be disturbed absent a showing of abuse of discretion. 12 O.S.1991 §§ 2402, 2403. A party complaining of the admission of evidence for prejudicial surprise must demonstrate, by reference to the appellate record, actual surprise and prejudice. *See, e.g., McKosky v. Talihina,* 1977 OK CIV APP 27, 581 P.2d 482. In the present case, we find no evidence in the record that SWBYP suffered either actual surprise or reversible prejudice from the offer and admission of Boatsman's tax returns, relevant to demonstrate Boatsman's damages. We consequently reject this proposition.

■ ¶ 19 SWBYP also asserts the trial court abused its discretion in admitting evidence and argument regarding punitive damages, complaining of prejudicial surprise by the introduction of the punitive damages issue on the day of trial. However, Boatsman raised the specter of punitive damages in his initial pleadings, and the parties conducted discovery based thereon. Further, although the trial court's pre-trial conference order apparently inadvertently failed to include the issue, the trial court granted and SWBYP accepted a continuance to prepare a defense to the punitive damage claim.

¶ 20 In this respect, 12 O.S. § 2015(B) mandates "freely" granted permission to amend a pre-trial order over objection "when the presentation of the merits of the action will be served thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits." Section 2015(B) also anticipates the "grant [of] a continuance to enable the objecting party to meet" the allegations of the amendment.

¶ 21 The record in the present case reflects that the trial court fully explored the punitive damages issue with the parties at more than one in-chambers hearing. The record also reflects the trial court's implicit determination of both the propriety of a continuance to allow SWBYP to more fully prepare, and SWBYP's failure to demonstrate resulting prejudice on the merits. On the record before us, we cannot say the trial court erred in allowing pursuit of a punitive damage claim, raised in the initial pleadings, but apparently, inadvertently omitted from the pre-trial order.

■ ¶ 22 SWBYP also challenges the award of punitive damages. Here, SWBYP again argues that inasmuch as Boatsman's claims sounded predominantly in contract, the law permits no punitive damages. Alternatively, SWBYP argues inadequacy of the evidence to support a finding of such egregious conduct as to permit an award of exemplary damages. SWBYP finally asserts the trial court erred in denying a remittitur of damages due to the combined effect of the multiple errors below which "undoubtedly had a prejudicial effect upon the jury [and] caus[ed] the jurors to express unfair sympathy for [Boatsman's] claims."

¶ 23 Again, we have previously rejected SWBYP's characterization of Boatman's claims as predominantly contractual, and "[i]n an action for the breach of an obligation

not arising from contract, the jury, in addition to actual damages, may ... give damages for the sake of example and by way of punishing the defendant." 23 O.S. Supp.1995 § 9.1(A). More particularly:

Where the jury finds by clear and convincing evidence that the defendant has been guilty of reckless disregard for the rights of others ... the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award exemplary damages in an amount not to exceed the greater of:

1. One Hundred Thousand Dollars ($100,000.00); or
2. The amount of the actual damages awarded.

23 O.S. § 9.1(B). In allowing punitive damages, § 9.1(A) directs consideration of:

[T]he seriousness of the hazard to the public arising from the defendant's misconduct; the profitability of the misconduct to the defendant; the duration of the misconduct and any concealment of it; the degree of the defendant's awareness of the hazard and of its excessiveness; the attitude and conduct of the defendant upon discovery of the misconduct or hazard; in the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and the financial condition of the defendant.

We have reviewed the record before us, and on the evidence we have recounted, we find competent evidence to support the submission of the punitive damage issue to the jury pursuant to 23 O.S. § 9.1(A) and (B).

¶ 24 SWBY asserts the trial court erred in denying a remittitur of damages because it is obvious the amount of the punitive damages award by the jury was the result of prejudice or improper sympathy. We do not agree. Based upon the evidence addressed above, this Court cannot conclude the punitive damages award is somehow grossly excessive or the result of prejudice or improper sympathy. To rule otherwise would be an improper substitute of our verdict for the verdict rendered by the jury, something we are not warranted in doing under the evidence presented in this matter. *Barnes v.*

*Oklahoma Farm Bureau Mut. Ins.*, 2000 OK 55, 11 P.3d 162, 178 Accordingly, the trial court's decision is affirmed.

¶ 25 AFFIRMED.

ADAMS, P.J., concurs; JOPLIN, J., concurs in part and dissents in part with separate opinion.

JOPLIN, J., concurring in part, dissenting in part.

I fully concur in the majority's opinion until Paragraph 24. On this issue, considering the ample award of $41,856.86 in compensatory damages, the jury's award of $58,-143.14 [1] in exemplary damages strikes me as manifestly unreasonable, grossly excessive, likely the product of the jury's sympathy or prejudice, and "larger than reason dictates to be necessary to deter such conduct in this defendant and others similarly situated." *Buzzard v. Farmers Ins. Co., Inc.*, 1991 OK 127, ¶ 54, 824 P.2d 1105, 1116; *Chandler v. Denton*, 1987 OK 38, ¶ 30, 741 P.2d 855, 868; *Timmons v. Royal Globe Ins. Co.*, 1982 OK 97, ¶ 44, 653 P.2d 907, 915. *Accord, American Nat. Bank & Trust Co. of Sapulpa v. BIC Corp.*, 1994 OK CIV APP 70, 880 P.2d 420; *Scribner v. Hillcrest Medical Center*, 1992 OK CIV APP 117, 866 P.2d 437. Under the facts and circumstances of this case, I would find an award of $1,000.00 in exemplary damages more than reasonable and adequate to punish SWBYP, and would direct remittitur of the remaining punitive damage award.

I therefore respectfully concur in part and dissent in part.

---

1. When combined with the compensatory award,    for total damages of exactly $100,000.00.